### JOHNSON & JOHNSON v. BAUER & BLACK.

(Circuit Court of Appeals, Seventh Circuit. October 4, 1897.)

No. 389.

TRADE-MARK—INFRINGEMENT.

Where medicinal and surgical plasters had long been put up in packages bearing a red Greek cross, so that they had become known and were asked for as "Red Cross Plasters," *held*, that the use by another of a Greek cross of somewhat different form, with a large red circle in the center, was an infringement, though bearing on its face letters and marks not on the other, and though there was little resemblance in the packages or other indicia. 79 Fed. 954, reversed. ·

Appeal from the Circuit Court of the United States for the Northern District of Illinois.

Johnson & Johnson, the appellant, a corporation existing by virtue of the laws of the state of New Jersey, brought suit in the court below against Bauer & Black, a corporation existing by virtue of the laws of the state of Illinois, to enjoin the alleged infringement of the trade-mark of the appellant, and brings this appeal from a decree dismissing its bill for want of equity. The appellant had long been engaged in the manufacture and sale of medicinal and surgical plasters of various kinds, put up in various descriptions of boxes, and has adopted as a trade-mark, in addition to other insignia, a red Greek cross, the panels of the boxes containing words and letters indicating that the appellant is the manufacturer, and announcing directions for the use of the contents. The appellee, since the adoption and use of such trade-mark by the appellant, has engaged in the like business, one of the members of the corporation being formerly in the service of the appellant, and acquainted with its business and methods. The appellee uses upon its goods a Maltese cross in white and gilt, with a red circle thereon, and the words and letters "B & B Trade Mark," except that upon its boxes having a red groundwork the circle of the cross is black. The following are sufficiently accurate representations of the respective trade-marks:

Red Cross.          Red Cross.

The evidence discloses that the plasters of the appellant had become known and were ordered and sold as "Red Cross Plasters." Otherwise than the marked resemblance in these crosses, there was but little, if any, similarity between the packages containing the goods of the appellant and those containing the goods of the appellee. The court below dismissed the bill for want of equity, upon the ground that there was no infringement shown, stating: "The complainant's sole individuality, if he has any at all, rests on that red Greek cross. I do not think that is sufficient to mark to him an exclusive right to use the Greek cross. I do not think that the defendant so nearly imitates his trade-mark, or comes anything like so nearly imitating it, as to deceive the public who are looking for the complainant's goods." 79 Fed. 954.

Before WOODS, JENKINS, and SHOWALTER, Circuit Judges.

Rowland Cox and William O. Belt, for appellant.

Moran, Mayer & Shrimski and Walter H. Chamberlain, for appellee.

JENKINS, Circuit Judge. We have reached a conclusion upon the evidence in this case directly opposed to the finding of the court below. It sufficiently appeared by the testimony that the goods of the appellant have come to be known, and are offered, ordered, and sold, as "Red Cross Plasters"; and we cannot but think that the Maltese cross adopted by the appellee, in so far as it contains a red circle, has a tendency to promote confusion, and will interfere with the legitimate trade of the appellant. It may be true that those engaged in the trade and acquainted with the manufactures of both parties would not be deceived; but as the goods of the appellant have come to be known as "Red Cross Plasters," and notwithstanding a discriminating examination would detect the distinctions in the trade-marks, the casual observer might easily be mistaken, and imposition would be easy. The red cross speaks to the eye, and the article being known by that designation speaks also to the ear by that name. It is the one peculiar and commanding feature imposed upon the package to designate its origin, and, in the absence of critical examination, the one manufacture may readily be imposed upon the purchaser desiring the other. This is peculiarly true where, as here, the mark is displayed upon the package containing the articles, and not upon the article itself.

In Pillsbury v. Flour-Mills Co., 24 U. S. App. 395, 64 Fed. 841, and 12 C. C. A. 432, we observed with respect to the ground upon which courts of equity interfere in such cases that:

"Disguise defeats the very end and object of legitimate competition, which is the free choice of the public. One may not legally use means, whether marks or other indicia, or even his own name, with the purpose and to the end of selling his goods as the goods of another. If such means tend to attract to himself the trade that would have flowed to the person previously accustomed to use them, their use will be restrained by the law."

And we also there said:

"A specific article of approved excellence comes to be known by certain catchwords easily retained in memory, or by a certain picture which the eye readily recognizes. The purchaser is required only to use that care which persons ordinarily exercise under like circumstances. He is not bound to study or reflect, he acts upon the moment. He is without the opportunity of comparison. It is only when the difference is so gross that no sensible man acting on the instant would be deceived that it can be said that the purchaser ought not to be protected from imposition. Indeed, some cases have gone to the length of declaring that the purchaser has a right to be careless, and that his want of caution in inspecting brands of goods with which he supposes himself to be familiar ought not to be allowed to uphold a simulation of a brand that is designed to work a fraud upon the public. However that may be, the imitation need only to be slight, if it attaches to what is most salient, for the usual inattention of a purchaser renders a good will precarious if exposed to imposition."

Within these principles, we cannot doubt that the use of the red Maltese cross upon the goods of the appellee is wrongful. If a less quantity than a full package is ordered under the name of "Red Cross Plasters," there would be no means of discovering the imposition upon the purchaser, the trade-mark not being attached to the goods themselves. If full packages of Red Cross plasters be ordered by one knowing of and desiring the goods of the appellant, a package of the appellee's goods bearing this salient feature of the red cross

would be well calculated to deceive. The red crosses being the distinguishing marks of the goods of both parties, it would naturally result that the goods of each would come to be known, as the evidence shows the appellant's goods have come to be known, as "Red Cross Plasters," and such infringement upon the appellant's rights ought not to be permitted.

Thus, in Seixo v. Provezende, 1 Ch. App. 192, it was said:

"If the goods of a manufacturer have, from the mark or device he has used, become known in the market by a particular name, I think that the adoption by a rival trader of any mark which will cause his goods to bear the same name in the market may be as much a violation of the rights of that rival as the actual copy of his device."

In one case before the United States patent office there was an interference with respect to two trade-marks for hams, the one of which consisted of the word "Bouquet," and the other of a bouquet of flowers; and the one was held, and we think properly, an infringement upon the other, because, as stated by Mr. Brown in his work upon Trade-Marks (section 449), while it was true that there was an utter lack of physical resemblance, and the one delineation could not be mistaken for the other, yet the test is:

"Would the use by different houses of the two things cause confusion? The ear is the medium to mislead the purchaser. He might ask this question, 'Have you the bouquet ham?' and either of the traders could truthfully reply in the affirmative. The picture and the word could not lawfully co-exist as marks for rivals dealing in the same class of merchandise."

So, also, in Read v. Richardson, 45 Law T. (N. S.) 54, the complainant's beer had acquired, because of the manner of its identification, the name of "Dog's Head Beer." The label consisted in part of the representation of a dog's head. The defendant used a label upon his beer utterly unlike complainant's, but consisting in part of a dog's head, but the representations were wholly unlike. The master of the rolls observed:

"Of course, they are both dogs and dog's heads, but I think the resemblance stops there. They are differently colored. One is yellow and white, and the other is brown and tan. They are a very different kind of dog,—remarkably different. This bulldog's head is a most emphatic bulldog's head, whereas the terrier is a remarkably mild species of terrier. They are very different animals indeed. The terrier looks somewhat like a cat. It is a very mild specimen. The dogs, too, have different collars on. I don't think that ordinary people would take one of these for the other."

Yet, notwithstanding, the court of appeals sustained the complainant's right, Lord Justice Brett asserting:

"If the goods of a manufacturer have, from a mark or device which has become known in the market, acquired a particular name, the adoption by a rival trader of any mark which will cause his goods to bear the same name in the market is a violation of the rights of his rival."

And Lord Justice Cotton observes:

"It merely comes to this: Is it possible from the use of this label that the defendant's beer may be called or be passed off on unwary or ignorant purchasers as 'Dog's Head Beer'?"

The cases of Reddaway v. Banham [1896] App. Cas. 199, Saxlehner v. Apollinaris Co. [1897] 1 Ch. 893, and N. K. Fairbank Co. v.

**R. W. Bell Manuf'g Co., 45 U. S. App. 190, 77 Fed. 869, and 23 C. C. A. 554,** may profitably be consulted in this connection.

It has been urged to our attention by supplemental brief that the trade-mark of the appellant is in the nature of a false representation, inducing the public to purchase and deal with the article under the belief that it is an article manufactured by the International Red Cross Society, or which had its sanction and indorsement. No such defense is asserted by the answer, nor are we advised that the International Red Cross Society, which we understand to be a society composed of charitable and benevolent individuals, associated to relieve suffering upon the battle field, and to mitigate the horrors of war, has ever engaged in the production and sale of medical and surgical plasters. Unless the matter be brought to our attention in proper pleadings and by proper proofs, we are not at liberty to consider the suggestion. Bell v. Bruen, 1 How. 187; Badger v. Ranlett. 106 U. S. 255, 1 Sup. Ct. 346, 350; Burbank v. Bigelow, 154 U. S. 558. 14 Sup. Ct. 1163.

The decree will be reversed, and the cause remanded, with direction to the court below to enter a decree in favor of the appellant here (complainant below), restraining the use of the Maltese or other description of cross of red color upon the goods and packages of the appellee, and for an accounting with respect to the damages which have accrued by reason of the use of the infringing design.