## CRESWILL *et al. v.* GRAND LODGE KNIGHTS OF PYTHIAS OF GEORGIA.

1. Where an association known as the Knights of Pythias, with a supreme lodge incorporated in the District of Columbia, and a grand lodge unincorporated in this State, the main objects of which were fraternal and benevolent, but which received and owned large amounts of property and had an insurance feature, acquired a proprietary right in the name by which it was known and under which it operated, no other association of persons organized for similar purposes had the right to fraudulently copy or infringe upon that name.

(a) The mere addition to the distinctive name of the defendants' association of the words, "of North America, South America, Europe, Asia, Africa, and Australia, jurisdiction of Georgia," can not be declared as matter of law to constitute such a difference as to make the name so altered free from the complaint of being an infringement, or to render the finding of the jury that there was a fraudulent infringement contrary to law.

2. Upon an application to the superior court for the grant of a charter for a private corporation, the law of this State makes no provision for another person to make himself a party to the proceeding for the purpose of resisting or objecting to the grant of the application.    But another corporation or association which has acquired a proprietary right in a name may apply to a court having equitable jurisdiction to enjoin the applicants from fraudulently appropriating such name and obtaining a charter under it for a similar organization, and copying its insignia, badges, and emblems, to the detriment of the plaintiff.

3. The evidence authorized the jury to find that there had been no such laches on the part of the plaintiffs as to bar them from a right to equitable relief.

4. Under the facts of this case, the rulings made by some courts that generally a foreign corporation has no right to enjoin a domestic corporation, which has been chartered under a similar name, from continuing to do business thereunder, especially in the absence of fraud, are not applicable.

5. This was not a suit between two corporations chartered in the District of· Columbia under the general incorporation act of May 5, 1870. The incorporated Supreme Lodge of the plaintiffs' association was a party, but that of defendants' association was not so. An assignment of error based on a contrary hypothesis was without merit.

6. Where the plaintiffs did not allege or base their proceeding on the fact that the defendants were colored persons, and the judge in charging the jury made no reference to the racial or social status of either the plaintiffs or the defendants, but submitted the issues as to the rights of the parties without reference to race or color, and the evidence authorized the finding against the defendants regardless of any consideration of their color, it can not be held that such finding was in conflict with that provision of the constitution of the United States which declares, "nor shall any State deprive any person of life, liberty, or property, without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws.

7. No ground of the motion for a new trial requires a reversal.

Decided February 21, 1910.

Equitable petition. Before Judge Pendleton. Fulton superior court. December 5, 1908.

Fish, C. J., and ·Evans and Atkinson, JJ., being disqualified, Judges R. W. Freeman of the Coweta circuit, H. G. Lewis of the Ocmulgee circuit, and Price Edwards of the Tallapoosa circuit were designated to sit in their stead. After argument, it appearing that Judge Lewis also was disqualified, counsel agreed that the case be decided by the members of the court which heard it. The judgment is concurred in by all the members of the court as thus constituted.

*Bell, Pettigrew & Bell,* for plaintiffs in error.

*John P. Ross* and *Hamilton Douglas,* contra.

EDWARDS, J. Charles D. Creswill and others made application to the superior court of Fulton county to be incorporated and made a body politic for the full period of twenty years, with the usual privilege of renewal at the expiration of said term, under the corporate name and style of the Grand Lodge Knights of Pythias of North America, South America, Europe, Asia, Africa, and Australia, jurisdiction of Georgia. The petition set forth that the object of petitioners was not pecuniary gain, but was the social and benevolent benefit of its members and their dependent relatives. They asked to be allowed to organize and charter subordinate lodges in this State and to provide an endowment fund, etc. The defendants in error, the Grand Lodge Knights of Pythias of

Georgia, T. H. Nickerson, D. J. Bailey, John P. Ross, William H. Leopold, R. C. Norman, C. M. Walker, B. D. Brantley, and George T. Cann, filed in said superior court a petition seeking to enjoin the plaintiffs in error from prosecuting said application to be incorporated under the name set forth in the petition for charter, or under the name, "Grand Lodge Knights of Pythias of Georgia," or any colorable imitation of such name, and from using any name embracing the word "Pythias" in conjunction with the words "Knights of," or any name which is a colorable imitation of said Grand Lodge Knights of Pythias of Georgia, and from using and wearing emblems and insignia like or a colorable imitation of the emblems and insignia of petitioners; and for general relief.    The court granted a rule nisi and a temporary restraining order. On the hearing the Supreme Lodge Knights of Pythias was made a party plaintiff, and it adopted the averments and prayers of the original petition.

Without going fully into the details of the plaintiffs' petition it is sufficient to state that the following is alleged:    The order of Knights of Pythias of which they were members was organized by Justus H. Rathbone in Washington, D. C., on February 19, 1864, and as a voluntary fraternal society adopted the name "Knights of Pythias," and has since been in continuous existence throughout the United States, using the same name.    The first Grand Lodge known as the Grand Lodge Knights of Pythias of the District of Columbia was organized in 1864.    The Grand Lodge of Pennsylvania was organized in 1867, and the Grand Lodge of New Jersey and the Grand Lodge of Maryland were each organized in 1868.    These grand lodges organized the Supreme Grand Lodge Knights of Pythias for the United States on August 11, 1868.    Since then the plan has been to organize and maintain subordinate lodges in the cities and towns throughout the United States and a grand lodge in each of the States and Territories of the United States, subject to and forming a part of the Supreme Lodge of the order from which subordinate lodges and grand lodges obtain authority and to which they owe allegiance.    The first subordinate lodge in Georgia was organized in 1869, and the Grand Lodge of Georgia was organized 1871.    The Supreme Lodge was incorporated under the laws of the United States in the District of Columbia, August 5, 1870; its articles of incorporation were amended under said laws,

October 5, 1875, and again on May 5, 1882, the name of the order being preserved in its entirety. The plaintiffs' order of Knights of Pythias was incorporated by an act of Congress approved June 29, 1894, by which all the rights, powers, and liabilities of the Supreme Lodge Knights of Pythias, incorporated on August 5, 1870, were preserved and made to survive to the body politic and corporate which was created by the act. This act of 1894 was amended by act of Congress approved June 7, 1900, the terms of this amending act being to make valid all meetings of the legislative bodies of the order held outside of the District of Columbia. The order of plaintiffs embraces more than 650,000 members, and the subordinate lodges in Georgia own assets valued at $160,319.08. There are in Georgia 143 sections of the insurance branch, with 2,327 members carrying an insurance protection of $4,113,500. The first lodge of the defendants' order was organized in Mississippi in 1880. Their Supreme Lodge was organized on October 10, 1889. Their first subordinate lodge in Georgia was organized in 1886, and their Grand Lodge for Georgia was organized in 1890.

The defendants by their answer neither affirmed nor denied the historical part of plaintiffs' petition as above set forth. They denied that their order had sprung from the plaintiffs' order, and that they had received any authority from plaintiffs' order to organize lodges, and that their name is identical with the name of the plaintiffs' order or is an imitation of the same. They set up, that the Supreme Lodge Knights of Pythias of North America, South America, Europe, Asia, and Africa was incorporated on October 10, 1889, by virtue of the act of Congress of the United States approved May 5, 1870, and organized under said charter lodges throughout the United States and other countries; that said corporation was reincorporated on the 14th of December, 1903, in order to more perfectly comply with the laws of the various States relative to fraternal societies doing business therein, which reincorporation was in the name last above mentioned, with the suffix "Australia;" that this corporation has been in active work ever since its organization in 1889; that the sole purpose of defendants in asking incorporation under the laws of Georgia is to form a more perfect union among the subordinate lodges, with a governing head which would have authority and be amenable to the laws of Georgia and be able to better enforce obedience among

its several members and subordinate lodges; that its signs, symbols, emblems, insignia, and other paraphernalia have been adopted by said corporation honestly and fairly, and it has a perfect right thereto; and that its membership in the United States numbers 80,747, and in Georgia 11,805.

The case came on for a hearing on the motion for preliminary injunction, upon substantially the above record, when injunction was refused. The plaintiffs brought the case by bill of exceptions to this court. The judgment of the court below was by this court affirmed with direction. *Grand Lodge Knights of Pythias* v. *Creswill*, 128 *Ga.* 775 (58 S. E. 163). By reference to this decision it will be seen that all questions of law or fact on the final trial of the case, except as therein ruled, were left open to be then determined; the only question settled being the point of want of proper parties plaintiff, which point it was held had been adjudicated in the court below, no exception to the ruling allowing amendments for this purpose having been taken.

The case coming on for trial in the court below, a verdict was rendered in favor of the plaintiffs against the defendants, and decree was entered as prayed for by the plaintiffs. The defendants moved for a new trial upon various grounds, which motion having been overruled, the case was again brought to this court for review. The original motion for a new trial and the amended motion contained forty grounds. The view we take of this case renders it unnecessary to discuss in detail the various grounds of the motion for a new trial, except those complaining that the verdict is contrary to the law and evidence and without evidence to support it. The record in the case is quite voluminous, but is made up largely of exhibits attached to the plaintiffs' petition and the defendants' answer, each setting out copies of proceedings to incorporate and reincorporate under the various acts of Congress. Each side has also put in the record certified copies of the constitution of the Supreme Lodges and the Grand Lodges and the statutes, declarations of principles, and much statistical matter pertaining to each order.

Neither plaintiffs' nor defendants' order has ever been incorporated in the State of Georgia. Seniority in the selection of the name, seniority of organization under the name with its continued use, and seniority of incorporation under the general laws enacted by Congress and seniority of organization in Georgia are all in

favor of the plaintiffs' case.   It is well established by the evidence
that the word "Pythias" is the distinctive word in the name of
both orders.   This word is used indifferently in all the designations
made by both orders touching its name and order.   While the de-
fendants' order in its original incorporation added the suffixes,
"of North America, South America, Europe, Asia, and Africa,"
and in a subsequent incorporation added "Australia," the testimony
oral and documentary shows that its order was called and known to
the public as the order "Knights of Pythias," "K. P.'s," etc.   In
the "Declaration of Principles" put in evidence by the defendants
it is declared that "the order of the Knights of Pythias is founded
in Friendship, Charity, and Benevolence," and the suffixes begin-
ning with North America, etc., are not used.   In the "Supreme
Constitution" introduced by defendants in their narrative touching
the early progress of the "Knights of Pythias" it is recited that
the "order was organized by J. H. Rathbone and others in the City
of Washington, D. C., February 19, 1864."   (This is the date of
the founding of the plaintiffs' order.)   It is further recited, in this
history of the early progress of the defendants' order, that "at the
session of the Supreme Lodge of the Knights of Pythias of the
World (plaintiffs' order), held at Richmond, Va., March 8, 1869,
an application for a charter from a body of colored citizens of
Philadelphia, Pennsylvania, praying that they might be permitted
to have and enjoy the great benefits of the Grand Order of the
Knights of Pythias, was refused on account of their color."   It is
also further recited in the by-laws of the defendants' order, intro-
duced by the defendants: "The order of Knights of Pythias having
been instituted and established on the 19th of February, 1864,
the Pythian period is hereby declared to date therefrom."

It is conceded that the emblems publicly used by the defendants'
order are identical with those worn and used by the plaintiffs' order,
this fact being testified to by Creswill, one of the defendants.   Some
confusion has arisen in Georgia in the delivery of the mail of the
plaintiffs' order, but this confusion is not shown to any great extent.
On one occasion a member of plaintiffs' order, seeking the "K. P.
Hall" of his own order, was directed to the "K. P. Hall" of the
defendants' order.   There is really very little if any material con-
flict of evidence between the parties.   As above stated, the jury
found in favor of the plaintiffs, this finding being: that the pro-

posed corporate name of the defendants is an infringement upon the name of plaintiffs' association; that such infringement injured plaintiffs in their property right in their name; that this infringement is of fraudulent purpose and design; that the emblems or insignia used by the defendants are the same as those used by the plaintiffs, and such use injures plaintiffs in their property rights; that the plaintiffs have not acquiesced in the use by defendants of the name and insignia; that since the organization of the order represented by petitioners, and its introduction in the State of Georgia, it has been the order of the Knights of Pythias and its members have been known as Knights of Pythias or Pythian Knights; that "Pythias" is the distinctive word in the name of the order represented by plaintiffs, which cardinally distinguishes it from the name and style of fraternal orders in the State of Georgia and in the United States, and the name set forth in defendants' petition for incorporation is substantially identical with the name and style of petitioners, the Grand Lodge Knights of Pythias of Georgia; that the name set forth in defendants' petition for incorporation is a colorable imitation of the name and style of petitioners, the Grand Lodge Knights of Pythias of Georgia; that the use by the defendants and their associates of the name under which they are seeking incorporation would work a fraud upon the plaintiffs and their associates and the public, in that the name under which defendants propose to incorporate is a colorable imitation of the name of the order of plaintiffs.

1. The first question of law which presents itself is whether the plaintiffs in the court below have shown such infringement of the name of their order and the use of their insignia as entitles them, under the law, to the relief which they ask. It is well settled that a number of persons may associate themselves together for the purpose of promoting any lawful enterprise. Fraternity, benevolence, and charity are among such lawful enterprises. Having thus associated themselves, they are authorized to use a name by which they will be known, and under certain circumstances they will be protected in the use of the name chosen. The name may be such as indicates the purpose of the association, or it may be arbitrary or fanciful. Words or phrases which are arbitrary or fanciful as applied to an association of persons organized for legitimate purposes will constitute a valid trade name. It has been held that words or

phrases are arbitrary or fanciful when they do not by their usual and ordinary meaning denote or indicate the purposes of the association, but come to indicate their purpose by application and association. The name of an historical or mythological event, or of a person long since dead, would be an arbitrary or fanciful name. An association first appropriating and using an arbitrary or fanciful name acquires a property right in that name. Where an association of persons have acquired, by appropriation and use, a proprietary right in a name that is arbitrary and fanciful, no other association of persons have the right to fraudulently copy or infringe upon that name. Paul on Trade-Marks, § 160. An infringement upon a trade name is such a colorable imitation of the name that the general public, in the exercise of reasonable care, might think that it is the name of the association first appropriating the name. Fraud on the part of the infringer is the use of the name, or infringement thereof, with the intent to make the impression upon the general public that the infringer's association and the association first appropriating the name are the same. If the association first appropriating and using a name have a clear right to the use of the same, its subsequent use by another association knowing of this right is presumed by the law to be fraudulent. It has been held that even the innocent or accidental use of a trade name capable of exclusive appropriation will be enjoined.

The plaintiffs' order, while primarily fraternal and benevolent, has certain property and business attributes and activities, including the acquiring and ownership of large amounts of property and the conducting of a department of insurance protection. Under the evidence, the element of injury is sufficiently shown. Moreover, as to the corporate plaintiff, the name of a corporation is in some degree analogous to a trade-mark. Clark on Corporations, 64. The finding of the jury in this case, that the use of the name of the plaintiffs' order by the defendants was with fraudulent purpose and design, we think is supported by the evidence. It appears from the testimony that both the plaintiffs' order and the defendants' order took out articles of incorporation under a general act of Congress of May 5, 1870, which makes provision for a summary suing out of articles of incorporation by persons desiring to associate themselves together for any lawful purpose. 16 United States Statutes at Large, 101. It will be remembered that the plain-

tiffs' order filed its articles on August 5, 1870, and the defendants' order October 10, 1889. This act contains the following provision relative to the names to be taken by the proposed corporation: "The provisions of this act shall not extend to nor apply to any association or individual who shall, in the certificate filed with the register of deeds, use or specify a name or style the same as that of any previously existing incorporated body in the District of Columbia." Counsel for defendants contend that the name they are seeking to appropriate by incorporation is not substantially the same or a colorable imitation of the plaintiffs' name. They say they make the name essentially different by adding the names of the continents, North America, South America, Europe, Asia, Africa, and Australia. We could not agree with this contention of the defendants if the names of the continents thus used as suffixes were employed in every instance where the order is designated; for it is well established by the proof that the distinctive words in both orders are the words "Knights of Pythias." At one time in the history of the plaintiffs' order, from the time of its incorporation under the act of 1870 to the time of its incorporation by the special act of Congress of 1894, the supreme order was known as the "Supreme Order Knights of Pythias of the World." The defendants, in specifying their field of operation, do not specify the entire earth, but the main continents thereof. These words denoting latitude of operation are not distinctive, and they are not always added in the use of the name. It is the use and colorable or imitative character of the name that controls, and the use made of the name by the association alleged to have infringed is a question of fact for the jury. *Foster, Milburn & Co.* v. *Blood Balm Co.*, 77 *Ga.* 216 (3 S. E. 284); *Lies* v. *Daniel*, 82 *Ga.* 272 (8 S. E. 432); *Whitley Grocery Co.* v. *McCaw Mfg. Co.*, 105 *Ga.* 839 (32 S. E. 113). The addition of the word "Artificial" by suffix to the name "Carlsbad Sprudel" does not prevent infringement, "Carlsbad" being the distinguishing word. The name "National Folding Box and Paper Company" is infringed by the name "National Folding Box Company Limited." "The imitation need only be slight, if it attaches to what is most salient." Johnson *v.* Bauer, 27 C. C. A. 374, 82 Fed. 662; McCann *v.* Anthony, 21 Mo. App. 83; Saxlehner *v.* Eisner & Mendelson Company, 179 U. S. 19, 31 (21 Sup. Ct. 7, 45 L. ed. 60); Paul on Trade-Marks, §§ 59, 168, 170,

188.   The plaintiffs in error rely upon the case of Supreme Lodge Knights of Pythias *v.* Improved Order Knights of Pythias, 113 Mich. 133 (71 N. W. 470, 38 L. R. A. 658), in which it was held that these names are not so similar as to cause one to be taken for the other.   We do not believe that this case is in line with the trend of authorities on the subject of similarity of names.   It evidently turned largely on the merits of the defendants' case as against the plaintiff which was seeking the injunction.   It appears that the members of both orders had been members of the plaintiff's order, and that a law had been enacted in the plaintiff's order, prohibiting the publication of its constitution, statutes, by-laws, rituals, etc., in any language other than English.   Those who afterwards organized the defendants' order, being foreigners by birth and many of them unable to read the English language, for this cause withdrew from the plaintiff's order.   The plaintiff's order had made the members of defendants' order Knights of Pythias, and therefore did not stand in the same relation to them as does the plaintiff's order in the case at bar.   Here no authority was given by plaintiffs to use the name, but such authority was expressly refused.   After such refusal the persons under whom the defendants claim to operate appropriated the name of the plaintiffs' order, in the very teeth of the law by which they claimed to have legal existence.

The Supreme Court of Tennessee has recently passed on a case similar to this one.   In that case Neil, J., says: "We are of the opinion that the injunction was properly awarded and made perpetual.   While the complainant was not engaged in business for profit, in the sense of commerce and trade, yet it employed certain business activities for the purpose of maintaining itself and to procure funds to carry out the purposes of its organization, and it maintained certain business institutions, its club-houses, and its home for aged and invalid members.   The name it had acquired and appropriated had become very valuable, in the nature of a trade-name;" etc.   Benevolent and Protective Order of Elks *v.* Improved Benevolent and Protective Order of Elks, 118 S. W. 389.

In a recent case of the Benevolent and Protective Order of Elks *v.* Improved Benevolent and Protective Order of Elks of the World, and the Grand Lodge of the same, in the Supreme Court

of New York, an injunction was granted on July 18, 1908. In the Appellate Division the judgment was affirmed on a memorandum decision. See 62 N. Y. Supp. 355.

2. It is contended that under the provisions of our law no one will be heard to object to the creation of a corporation by the superior courts, that the power exercised by the superior courts in granting charters is legislative and not judicial, and therefore that a charter will be granted as a matter of course. See Civil Code, §2350. It is true that it has been held that the act of the superior court in granting a charter under the statute is legislative in its character, rather than judicial. *Gas Light Co.* v. *West*, 78 *Ga.* 318. It is quite clear that the provisions of our law on this subject have not been framed to enable a stranger to the proceeding to make himself a party thereto, either as objector or otherwise, in order to resist the same; but it has never been held, to our knowledge, that any person whose name would be affected by the granting of a charter to one who fraudulently undertakes to appropriate such name could not assert his right in equity in a direct proceeding for that purpose, and make the same effective by injunction. On the contrary it has been distinctly held by this court that such right may be thus asserted. *Lane* v. *Brothers & Sisters of the Evening Star Society,* 120 *Ga.* 355 (47 S. E. 951).

3. The defendants contend that the plaintiffs have been guilty of such laches as estops them from having injunction against the use by defendants of the name in controversy. As before stated, the evidence in this case amply establishes the fact that the defendants, or those under whom they assert a claim of right to operate, took the plaintiffs' name not only without authority but after defendants had been by the plaintiffs' order expressly refused; and further that the name was adopted in articles of incorporation under a statute which expressly forbade the use of a name already appropriated by another. This puts the defendants' case within that class where the name has been taken and is used in fraud of the plaintiffs' rights. The Civil Code, §3939, provides, "Equity gives no relief to one whose long delay renders the ascertainment of the truth difficult, though no legal limitation bars the right." The status of each order, from the organization of each, is clearly shown by the testimony submitted by each side, and, as before stated, there is very little dispute between the parties so

far as the testimony is concerned. A perusal of the record in this case makes it clear that the delay of the plaintiffs in bringing this suit has not prejudiced the defendants in their ability to ascertain the truth. Does section 3775 of the Civil Code afford a rule for equitable estoppel? It provides, "The limitations herein provided apply equally to all courts; and in addition to the above, courts of equity may interpose an equitable bar, whenever, from the lapse of time and laches of complainant, it would be inequitable to allow a party to enforce his legal rights." Among the "legal rights" sought to be enforced in many cases of this character is that of damages for infringement, loss of profits, etc. Damages are not sought in this case, the only legal right sought by plaintiffs being to have the use of the name in question by defendants prohibited and discontinued, as well as the use of certain emblems and insignia. It is true that the defendants have established an order in this State, which has a numerous membership, and that in its insurance department and by its charities it dispenses a considerable sum of money; and the enforcement of the decree in this case that it shall not continue to do this work in the name it now proposes to employ might work considerable inconvenience and some hardships. While we see no reason why this can not be readily done by the defendants and the work of benevolence and charity they are engaged in be but little impeded, yet even this enforcement would not be granted if the plaintiffs have been guilty of such laches as works an equitable estoppel. The question, therefore, to be determined is upon the assignment that the finding of the jury, that the plaintiffs have not acquiesced in the use of their name by defendants, is contrary to law and evidence and without evidence to support it. The application of the defendants to be incorporated in Fulton county in 1905, which is sought to be enjoined, is the first attempt to organize under the laws of this State. This is a secret society holding its meetings behind closed doors. The evidence further discloses that there was no confusion in the delivery of mail until a short time before this suit was instituted. As each order grew in the number of its members and lodges the probability of confusion in the name increased. Besides, the element of actual fraud has been considered in cases of trade-marks and labels in dealing with the subject of laches. McIntire *v.* Pryor, 173 U. S. 38 (19 Sup. Ct. 352, 43 L. ed. 606) ; McLean *v.* Flem-

ing, 96 U. S. 245 (24 L. ed. 828) ; Menendez v. Holt, 128 U. S. 514 (9 Sup. Ct. 143, 32 L. ed. 526).

The court below properly submitted to the jury the question whether under the proof the plaintiffs had been guilty of such acquiescence or laches as would estop them, rightly holding that the burden was on the defendants to establish such acquiescence as would bar the plaintiffs' right to have relief.    As to burden of proof when fraud has been shown, see 18 Am. & Eng. Enc. Law, 118, and cit.    In South Carolina it appears that the plaintiff is not required in the first instance to prove his ignorance; the burden to show knowledge being on the defendant.    Means v. Foster, 4 S. C. 249 ; Bank v. Dowling, 52 S. C. 345 (29 S. E. 788). Quoting from 18 Am. & Eng. Enc. Law, 119, "There is no artificial, fixed, or determinate rule according to which the defense [of laches] is applied.    By reason of the difference in the facts, no one case becomes an exact precedent for another.    So each case as it arises must be decided according to its own particular circumstances, taking into consideration all the elements which affect the question."    "Though the lapse of a few years may be sufficient to defeat the action in one case, a longer period may be held requisite in another, dependent upon the situation of the parties, the extent of their knowledge or means of information," etc.    "The cases all proceed upon the theory that laches is not, like limitation, a mere matter of time, but principally a question of the inequity of permitting the claim to be enforced—an inequity founded upon some change in the condition or relations of the property or the parties." Citing authorities from numerous State courts and from United States courts.

The general rule that laches will bar equitable relief seems to be qualified in trade-mark and trade-name cases, especially in the United States.    "In England the rule is somewhat strictly applied that the proprietor of a trade-mark forfeits his right to relief against infringement by laches and acquiescence in the use of his mark by another."    "In the United States the rule is not so strictly applied, the general rule being that acquiescence or delay in asserting a trade-mark right against an infringer amounts only to a license at will, which can be terminated at any time by a suit for an injunction.    If the title of the plaintiff is clear and the infringement plain, an injunction will be granted."    28 Am. & Eng.

Enc. Law (2d ed.), 397, citing many authorities, State and Federal. Taking into consideration that the subject of controversy in this case is in the nature of a trade-name, and that the contest is between two secret societies whose relations to each other, during the period from the appropriation of the name by one to the institution of the suit for injunction by the other, was not the usual relation that one person ordinarily sustains to another, we can not say that the finding of the jury that the plaintiffs had not acquiesced in the use of their name by defendants is not supported by the evidence. The suit was filed promptly after the defendants came out into the open and by petition duly published asked the court to give legal sanction to their use of the plaintiff's name.

4. Authorities are submitted in the brief of the plaintiffs in error on the proposition asserted by them, that "a foreign corporation has no right to object to a domestic corporation being incorporated under the same name." If it be contended that this contest is between the Supreme Lodge Knights of Pythias as a party plaintiff and the defendants Creswill et al., as constituting a domestic corporation, party defendant, the proposition stated is not supported by the record. The defendants are not a Georgia corporation. If the incorporation of the plaintiffs' order and that of the defendants under act of Congress are compared, that of the plaintiff is the older. Moreover, the plaintiffs include not only a corporation but also individual members of a voluntary organization of this State.

5. The plaintiffs in error make what they call two Federal questions in this case. (1) That this is a contest between two Federal corporations, and therefore a Federal question is involved. Complaint is made, that the court below erred in not stating to the jury that the defendants claimed their right to use the name in question by authority of the act of Congress, being the general incorporation act of May 5, 1870; and that the finding of the jury and the decree of the court violate their rights under this charter. We do not appreciate the force of this exception. It would not have been proper for the trial judge to submit such a question to the jury. A finding on the point could have thrown no light on the controversy and could not have aided the defendants in any way. This proposition is also not supported by the record. This suit was brought against Creswill et al. as individuals acting and

seeking a charter. The Supreme Lodge of the order of which they claim to be members has never been made a party to this case, and is not here asserting any corporate rights. (2) The second Federal question raised is claimed to be predicated on the provision of the fourteenth amendment to the constitution of the United States: "nor shall any State deprive any person of life, liberty, or property, without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws." The pleadings of the plaintiffs in this case contain no reference to the social status of the defendants or their color. The defendants, in an amendment to their original answer, set up that the members of the defendants' order are members of the Negro race, and that the order of the plaintiffs is made up of members of the Caucasian race. The able judge trying this case, in his instructions to the jury, made no reference to the matters set up by this amendment on the part of the defendants or to the racial or social status of either the plaintiffs or the defendants. Neither do we think that the defendants, by merely alleging their color, can introduce this subject into the case to make a Federal question or to claim any superior rights thereby. The question of color raised by the defendants certainly does not entitle them to greater rights in the case under the fourteenth amendment to the Federal constitution than they would have enjoyed had they been members of the same race as the plaintiffs.                                    *Judgment affirmed.*