TALBOT et al. v. INDEPENDENT ORDER OF OWLS et al.

(Circuit Court of Appeals, Eighth Circuit. February 25, 1915.)

No. 4091.

*(Syllabus by the Court.)*

1. CORPORATIONS ⟨Key⟩49—NAME—USE OF SIMILAR NAME—INJUNCTION.

An established voluntary association for religious, fraternal, benevolent, or social purposes is entitled to an injunction against the use by another person, association, or by any corporation, of its name or emblem, and of any name or emblem so similar to it as to be likely to create confusion, or to deceive, or induce persons to join or treat with the latter as the former, because such a use of such a name or emblem in effect perpetrates a fraud upon the former, and upon the persons confused or deceived.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 137; Dec. Dig. ⟨Key⟩49.]

2. EQUITY ⟨Key⟩65—RIGHT TO RELIEF—CLEAN HANDS.

The principle, "He who comes into equity must do so with clean hands," repels or defeats a complainant only when his iniquity consists of wrongful conduct in the very act or transaction which raises the equity he seeks to enforce.

[Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 185–187; Dec. Dig. ⟨Key⟩65.]

Appeal from the District Court of the United States for the Southern District of Iowa; Smith McPherson, Judge.

Suit by John W. Talbot and others against the Independent Order of Owls, a corporation, and others. From decree for defendants, plaintiffs appeal. Reversed and remanded, with directions to render decree for plaintiffs.

W. J. Roberts, of Keokuk, Iowa, for appellants.
Charles A. Houts, of St. Louis, Mo., amicus curiæ.
F. M. Ballinger, of Keokuk, Iowa, for appellees.

Before SANBORN, ADAMS, and SMITH, Circuit Judges.

SANBORN, Circuit Judge. In November, 1904, John W. Talbot, George D. Beroth, and five other persons signed a constitution by which they and those who subsequently became members agreed with each other to be bound, and organized a voluntary secret ritualistic degree association under the name the "Order of Owls." The constitution provided that the object of the order should be the advancement of its members socially, morally, intellectually, and otherwise, that the governing body of the association should be the "Home Nest," which should consist of the organizers thereof and of their successors, elected by the unanimous vote of the survivors to fill any vacancy caused by the death, resignation, or removal of any member; that the legislative power of the order was vested in the Home Nest sitting in January of each year; that the sole executive power of the order was vested in the Home Nest when it was in session, and when it was not in session in the Supreme President, who should be elected by

the Home Nest annually; that the subordinate or local bodies of the order should be called "Nests," and each of them should pay to the Home Nest 10 cents quarterly for each of its members. John W. Talbot became and has continued to be the Supreme President of the order, whose membership increased until it had about 200,000 members and about 1,500 nests scattered throughout the United States, Canada, and the Philippines. In 1907 this order adopted an emblem, consisting of a design of three owls, each bearing the letter "O" on its breast and sitting side by side on the same rod facing the observer. In July, 1911, the Supreme President revoked the charter of subordinate nest No. 1227, stationed at Keokuk, Iowa. Thereupon F. M. Ballinger, one of the defendants, and others, who had been members of nest No. 1227, organized a corporation under the laws of Iowa under the name "Independent Order of Owls" for the same purposes as those for which the Order of Owls was organized, adopted the same emblem as that of the original order, except that, instead of placing an "O" on the breast of each of three owls, it placed the letters "I. O. O." above the owls and the word "Honesty" below them. This new corporation then proceeded to conduct its operations—to solicit and receive members in competition with the original Order of Owls. Talbot and Beroth, as the sole members of the Home Nest of the Order of Owls, in their own behalf and in behalf of all the members of that order, brought this suit in equity against the Independent Order of Owls and F. M. Ballinger, to prevent them from using the name "Independent Order of Owls," or any name which contains the word "Owls," or the emblem that the Independent Order of Owls had adopted. At the final hearing the court below rendered a decree of dismissal of the complaint, on the grounds that the words Independent Order of Owls so distinguished the defendant corporation from the Order of Owls, and the emblem of the former so distinguished it from the emblem of the latter, that the plaintiffs were entitled to no injunction against their use, and that the plaintiffs had not come into court with clean hands.

[1] An established voluntary association for religious, fraternal, benevolent, or social purposes is entitled to an injunction against the use by another person, association, or corporation of its name or emblem, and of any name or emblem so similar to its as to be likely to create confusion, or to deceive or induce persons to join or treat with the latter as the former, because such a name or emblem in effect defrauds the former and the persons so confused or deceived. McGlynn v. Post, 21 Abb. N. C. (N. Y. 1887) 97, 98; Black Rabbit Association v. Munday, 21 Abb. N. C. (N. Y. 1887) 99, 103, 104; Creswill v. Grand Lodge K. P. of Georgia (1910) 133 Ga. 837, 67 S. E. 188, 190, 192, 193, 184 Am. St. Rep. 231, 18 Ann. Cas. 453; Society of the War of 1812 v. Society of the War of 1812 in the State of New York, 46 App. Div. 568, 62 N. Y. Supp. 355; Benevolent & Protective Order of Elks v. Improved Benevolent & Protective Order of Elks of the World, 60 Misc. Rep. 223, 111 N. Y. Supp. 1067, 1069; Salvation Army in United States v. American Salvation Army (1909) 135 App. Div. 268, 120 N. Y. Supp. 471, 475, 476; International Committee of Young Women's Christian Association v. Young Women's

Christian Association of Chicago, 194 Ill. 194, 62 N. E. 551, 56 L. R. A. 888; Benevolent & Protective Order of Elks v. Improved Benevolent & Protective Order of Elks of the World (1912) 205 N. Y. 459, 463, 466, 98 N. E. 756, Ann. Cas. 1913E, 639. That this principle of equity is just and salutary, and that it should be liberally applied and enforced, is self-evident. That the use by the defendants below of the name Independent Order of Owls and the emblem it adopted to conduct the operations of a corporation for the same purposes as the purposes for which the Order of Owls had used its name and its emblem for years before the junior organization was formed, and until its subordinate nests had become 1,500 and its members 200,000, would be likely to create confusion among those interested in their operations, and to deceive and induce strangers to join and treat with the junior organization in the belief it was the senior and well-known association, is too clear for discussion. The testimony of the eyes, when a glance at the two names and the two emblems is taken, is a demonstration of this proposition.

[2] Nor does the evidence which is found in this record upon which the defendants rely to defeat the plaintiffs, and to bring this suit under the ban of the principle, "He who comes into equity must come with clean hands," sustain that defense. That principle does not repel all sinners from the precincts of courts of equity, nor does it disqualify any plaintiff from obtaining full relief there who has not done iniquity in the very transaction concerning which he complains. The wrong which may be invoked to defeat him must have an immediate and necessary relation to the equity for the enforcement of which he prays. Dering v. Earl of Winchelsea, 1 Cox, Chan. 318, 319; Lewis & Nelsen's Appeal, 67 Pa. 153, 166; Bateman v. Fargason (C. C.) 4 Fed. 32, 33; Shaver v. Heller & Merz Co., 108 Fed. 821, 824, 48 C. C. A. 48, 51, 65 L. R. A. 878; Trice v. Comstock, 121 Fed. 620, 627, 57 C. C. A. 646, 653, 61 L. R. A. 176; Cunningham v. Pettigrew, 169 Fed. 335, 344, 94 C. C. A. 457, 466. The equity which the plaintiffs are endeavoring to enforce is the prevention of the fraudulent use by the defendants and their rival organization of a name and an emblem so similar to those of the Order of Owls that they are calculated to create confusion between the two organizations and to induce strangers to deal with the junior body in the belief that it is the senior one. The iniquity the defendants seek to present for the purpose of defeating the plaintiffs' recovery has no necessary or other relation to that equity. Even if all the iniquity charged were proved, there is no evidence in this record that any of it induced or in any way affected the unlawful action of the defendants in their use of the name or emblem they adopted for the evident purpose of appropriating to themselves the reputation and prestige of the Order of Owls. That alleged iniquity consisted of claimed personal delinquencies of John W. Talbot in his relations with strangers to both organizations and in his relation to the Order of Owls, concerning which the defendants, a rival organization and its members, have no warrant to call him or the Order of Owls to account. No defense to the plaintiffs' cause of action was established in this case, and their title to the relief they sought is clear.

Let the decree below be reversed, and let the case be remanded to the District Court, with directions to render a decree for the plaintiffs for the relief prayed in their complaint.