AMERICAN SUGAR REFINING CO. v. McFARLAND et al.

(District Court, E. D. Louisiana. January 17, 1916.)

No. 15285.

1. CONSTITUTIONAL LAW ☞240—MONOPOLIES ☞10—EQUAL PROTECTION OF THE LAWS—CLASSIFICATION.

Act La. No. 10 of 1915, regulating the business of refining sugar, provides that any person engaged in the business of refining sugar within the state, who shall systematically pay in Louisiana a less price for sugar than he pays in any other state, shall be prima facie presumed to be a party to a monopoly or combination in restraint of trade or commerce, and upon conviction thereof subject to a fine of $500 a day for the period during which he is adjudged to have done so, and that the business of refining sugar within the meaning of that act is thereby defined to be that of any concern that buys or refines raw or other sugar exclusively, or that refines raw or other sugar from sugar taken on toll, or that buys and refines more raw or other sugar than the aggregate of the sugar produced by it from cane grown and purchased by it. Held, that the discrimination between the sugar refiners to which it applies and buyers of sugar not engaged in refining, or refiners of sugar not engaged in refining in Louisiana, or not buying or refining more sugar than the aggregate of that produced from cane grown and purchased by them, or not buying sugar in any other state, is such a denial of the equal protection of the laws to the refiners to which it applies as to render the statute invalid and unenforceable, as it makes the fact of one's ownership of property in Louisiana the test of criminality, and makes an arbitrary selection of the parties who shall be subjected to its penal provisions, without regard to any difference between their delinquency and that of others.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 688, 692, 693, 697–699; Dec. Dig. ☞240; Monopolies, Cent. Dig. § 9; Dec. Dig. ☞10.]

2. INJUNCTION ☞105—SUBJECTS OF RELIEF—ENJOINING ENFORCEMENT OF STATUTE.

A sugar refining company, within the class to which Act La. No. 10 of 1915, regulating the business of sugar refining, applies, is entitled to injunctive relief against the enforcement of such statute.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 178, 179; Dec. Dig. ☞105.]

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

3. INJUNCTION ⟨key⟩21—GROUNDS FOR DENIAL—COMING INTO COURT WITH UN-
CLEAN HANDS.

That a sugar refining company, seeking injunctive relief against the enforcement of a statute regulating the business of buying and refining sugar, and arbitrarily discriminating between parties engaged in such business, has in the past been guilty of alleged harmful and lawless practices in the conduct of its business, is not ground for denying injunctive relief, as such relief will not protect it from the consequences of any past misconduct, or enable it in the future to do anything which it has not a right to do.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. § 19; Dec. Dig. ⟨key⟩21.]

In Equity. Suit by the American Sugar Refining Company against William N. McFarland and others. On application by complainant for an interlocutory injunction. Injunction granted.

This cause came on to be heard on the application of complainant for an interlocutory injunction during the pendency of the suit at this term and was argued by counsel, and thereupon, upon consideration thereof, and for the written reasons on file, it is ordered, adjudged, and decreed as follows, viz.: That the defendants, and each of them, be and they are hereby enjoined and restrained, during the pendency of this suit and until a final decree herein, from enforcing or attempting to enforce, or causing to be enforced or attempted to be enforced, against the American Sugar Refining Company, the complainant herein, the provisions of Act No. 10 of the Extraordinary Session of the General Assembly of Louisiana of 1915, and any and all regulations which may be formulated or promulgated thereunder. Done and signed at New Orleans, this 17th day of January, 1916.

Joseph W. Carroll, George Denegre, and Hugh C. Cage, all of New Orleans, La., and James M. Beck, of New York City, for complainant.

Ruffin G. Pleasant, Atty. Gen., of Louisiana, and Donelson Caffery, of New Orleans, La., for defendants.

Before WALKER, Circuit Judge, and NEWMAN and FOSTER, District Judges.

PER CURIAM. [1] This suit brings into question the validity of an act of the Legislature of Louisiana, approved June 10, 1915, which purports to regulate the business of refining sugar and to prohibit certain irregularities and practices in that business.

"Unless the Legislature may arbitrarily select one corporation or one class of corporations, one individual or one class of individuals, and visit a penalty upon them which is not imposed upon others guilty of like delinquency this statute cannot be sustained. * * * Arbitrary selection can never be justified by calling it classification. The equal protection demanded by the Fourteenth Amendment forbids this." Gulf, Colorado & Santa Fé Railway v. Ellis, 165 U. S. 150, 159, 17 Sup. Ct. 255, 258 (41 L. Ed. 666).

"A state may in its wisdom classify property for purposes of taxation, and the exercise of its discretion is not to be questioned in a court of the United States, so long as the classification does not invade rights secured by the Constitution of the United States. But different considerations control when the state, by legislation, seeks to regulate the enjoyment of rights and the pursuit of callings connected with domestic trade. In prescribing regulations for the conduct of trade, it cannot divide those engaged in trade into classes and make criminals of one class if they do certain forbidden things, while allowing another and favored class engaged in the same domestic trade to do the same things with impunity. It is one thing to exert the power of taxation so as to meet the expenses of government, and at the same time, indirectly, to build up or protect particular interests or industries. It is quite a different

⟨key⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

thing for the state, under its general police power, to enter the domain of trade or commerce, and discriminate against some by declaring that particular classes within its jurisdiction shall be exempt from the operation of a general statute making it criminal to do certain things connected with domestic trade or commerce. Such a statute is not a legitimate exertion of the power of classification, rests upon no reasonable basis, is purely arbitrary, and plainly denies the equal protection of the laws to those against whom it discriminates." Connolly v. Union Sewer Pipe Company, 184 U. S. 562, 22 Sup. Ct. 431, 46 L. Ed. 679.

As to what constitutes arbitrary selection, as distinguished from legal classification, see, also, Watson v. Maryland, 218 U. S. 173, 30 Sup. Ct. 644, 54 L. Ed. 987. That the statute in question is a case of arbitrary selection of those who are sought to be made the victims of the penalties it prescribes, in the absence of any "fair reason for the law that would not require with equal force its extension to others whom it leaves untouched," we think is demonstrated by a statement of its methods of selecting those engaged in the sugar trade who are to be subject to its provisions, and of distinguishing them from others engaged in the same business whom it leaves untouched. A prime object of the statute, plainly disclosed by its provisions, is to prevent only particularly described persons or corporations engaged in the business of refining sugar in Louisiana from systematically paying in Louisiana a less price for sugar than they pay in other states, and to force them into the practice of paying as much for sugar bought by them in that state as they pay in any other state, by subjecting their refineries to seizure and sale if they discontinue the purchase of sugar in Louisiana in the way contemplated by the act. The statute provides:

"That any person engaged in the business of refining sugar within this state who shall systematically pay in Louisiana a less price for sugar than he pays in any other state shall be prima facie presumed to be a party to a monopoly or combination or conspiracy in restraint of trade and commerce, and upon conviction thereof shall be subject to a fine of five hundred dollars a day for the period during which he is adjudged to have done so." Act La. No. 10 of 1915, § 7.

This provision is the heart of the statute. Other provisions are but means for enforcing the requirement of this one. If this provision is stricken out, the statute is practically inoperative. Another section of the statute provides that:

"The business of refining sugar within the meaning of this act is hereby defined to be that of any concern that buys or refines raw or other sugar exclusively, or that refines raw or other sugar from sugar taken on toll, or that buys and refines more raw or other sugar than the aggregate of the sugar produced by it from cane grown and purchased by it."

This exempts from the operation of the act any one engaged in the purchase of sugar, though he is also engaged in the business of refining sugar, if he does not carry on that business in Louisiana, and exempts him, though he may carry on that business in Louisiana, if in doing so he does not buy and refine more raw or other sugar than the aggregate of the sugar produced by him from cane grown and purchased by him. One engaged in Louisiana in the business of sugar refining, as defined by the statute, may, if he does not buy sugar in any other state, systematically pay in Louisiana a less price for sugar than

any one else pays in any other state, without subjecting himself to the adverse prima facie presumption and penalties prescribed by the act. One engaged in the business of purchasing sugar, if he is not also engaged in the business of refining, may, without violating the act, systematically pay in Louisiana a less price for sugar than he pays in any other state. One who is engaged in the sugar refining business anywhere else in the world, except in the state of Louisiana, may, without subjecting himself to any of the penal consequences provided for by the act, systematically pay in Louisiana a less price for sugar than he pays in any other state. We cannot conceive of any fair reason for exempting such a person from the operation of the act, and at the same time subjecting to its penal provisions one whose situation and conduct are exactly the same in every particular, except that his refinery is located in Louisiana, while the exempt person's refinery is located elsewhere. The result is to make the fact of one's ownership of property in Louisiana the test of the criminality of his conduct in buying a commodity in that state. We take it that a purpose of the statute was to prevent a practice resulting in the undue depreciation of the price of a commodity of the state. But the statute undertakes to prevent such a practice only in the case of certain buyers, leaving beyond the reach of the prohibition other buyers whose practices may be identical and equally harmful in their tendencies. A discrimination between two buyers of a commodity of a state, which results in imputing criminality to the conduct of one of them in making his purchases if he owns property or carries on another business in the state, while exactly the same conduct of another is left free of such an imputation, though he owns the same kind of property or is engaged in the same business, but not in the same place, is not based on any difference between the conduct of the one and that of the other. Those who are attempted to be subjected to the penal provisions of the act are determined by an arbitrary selection, wholly without regard to any difference between their delinquency and that of others whom the statute leaves untouched. This is such a denial of the equal protection of the law as renders the statute invalid and unenforceable.

[2] The case is one warranting relief by injunction. Ex parte Young, 209 U. S. 123, 28 Sup. Ct. 441, 52 L. Ed. 714, 13 L. R. A. (N. S.) 932, 14 Ann. Cas. 764.

[3] The suggestion has been made that, even though the statute in question is an invalid one, a court of equity should not stay the enforcement of it against the plaintiff, because it comes into court with unclean hands, in that in its conduct of the business in which it is engaged it has been guilty of harmful and lawless practices. As the granting of the relief sought cannot be made the means of protecting the plaintiff from the consequences of any misconduct of which it may have been guilty, or of enabling it in the future to do anything which it has not a right to do, we are not of opinion that the doors of a court of equity properly may be closed to the plaintiff because of some former delinquency on its part with reference to which the aid of the court is not asked or given. The wrong of a plaintiff which may be invoked to defeat his claim to equitable relief must have an imme-

diate and necessáry relation to the equity for the enforcement of which he prays. Talbot v. Independent Order of Owls, 220 Fed. 660, 136 C. C. A. 268.

The conclusion is that an interlocutory injunction should issue as prayed for; and it is so ordered.