## No. 11,875.

MOST WORSHIPFUL PRINCE HALL GRAND LODGE *v.* MOST WORSHIPFUL HIRAM GRAND LODGE, ET AL.

Decided December 10, 1928.   Rehearing denied December 31, 1928.

Mr. GEORGE G. Ross, for plaintiff in error.

Mr. CHARLES GINSBERG, Mr. M. S. GINSBERG, for defendants in error.

*En Banc.*

MR. JUSTICE ADAMS delivered the opinion of the court.

THE names of the parties appear here in the same order as in the trial court. They will be referred to as plaintiff and defendant or defendants. The name of plaintiff is "Most Worshipful Prince Hall Grand Lodge, Free and Accepted Masons of Colorado and Jurisdiction." The name adopted by defendant is "Most Worshipful Hiram Grand Lodge, Free and Accepted Ancient York Masons of Colorado and Jurisdiction, National Compact Prince Hall Origin." Both are organized, or attempted to be organized, as corporations not for profit under the Colorado statutes. One John James, a member of defendant lodge, is also named as a defendant, but the principal contestants are the two lodges, and the determination of their respective claims is decisive as to James. We therefore discuss them only, and reference hereafter to the defendant in the singular, means the defendant lodge.

Plaintiff sued defendants to obtain an injunction restraining them from using the corporate name adopted by defendant lodge, on the ground that such name is similar to that of plaintiff, and liable to be mistaken for the name of the latter. The suit was also to have defendants restrained from using Masonic emblems and the insignia of that order. Plaintiff was nonsuited, and it brings the case here for review.

Plaintiff filed its articles of incorporation in the office of the secretary of state on July 14, 1923. Defendant filed its articles in the same office on January 26, 1926. Each lodge is composed of colored men. Each is organized for general charitable, benevolent and fraternal purposes. Each has its principal office in the city of Denver, and each has subordinate lodges, or "Blue" lodges, in various parts of the state.

Before plaintiff was incorporated, it operated as an unincorporated association, continuously since the year 1876, under a name like the one now used, except the words "Prince Hall," which were added when it was incorporated. It has a membership of about eight hundred in this state. It claims to be independent of any national grand body or superior.

Defendant claims to be subject to a national grand lodge, with headquarters in the state of Georgia, and that it is operating in this state pursuant to authority derived from such national grand body. How long defendant functioned in Colorado, or attempted so to do, as a Masonic lodge before its incorporation is not clear, but it appears inferentially that this did not occur before the year 1925.

Although defendants introduced no evidence, nevertheless the articles of incorporation of both corporations, certified copies of which were produced by plaintiff, are of the same general character, except as here noted. They go into minute detail, and assist in a comparison of their respective claims. Both have similar Masonic traditions, and use the same emblems and insignia of Masonry as they understand and practice it. Both claim to be York Masons, according to an old constitution adopted at York, in the Kingdom of England. Both claim to be of Prince Hall origin. Prince Hall was a colored man of Boston, Massachusetts, who, with several of his brethren, are said to have petitioned the Grand Lodge of England for a warrant to operate as a

just and lawful body of Masons. It is claimed that such authority was granted by such Grand Lodge in the year 1784, and that colored Masons have worked as a just and lawful body of Masons in the United States since 1785. The claims of plaintiff and defendant may be summarized with the statement that while they both cherish the same Masonic traditions, ostensibly work in the same way, and with substantially the same emblems and insignia of Masonry, and under similar names, the two lodges part ways at this point. Each has its legal derivation under separate authority or charters, each is a wholly separate entity, and plaintiff claims the prior and exclusive right in Colorado to its name or a similar name, and such emblems and insignia.

The evidence shows that in October, 1926, defendant's members paraded in Denver as Masons, by permission of the city officials, accorded to such members as Masons, on application of the latter. They also held public exercises as such. According to a printed program, some of the meetings were held in their so-called "Masonic Hall," and some at a church. The folder announced, among other things, "The Grand Body will assemble at the Masonic Hall and parade to the church." Defendant's delegates wore Masonic badges, indicating their connection with defendant's order. Other purported Masonic activities on the part of defendants appear of record, none of which are contradicted by the evidence.

We shall consider the two principal legal propositions separately. First, concerning the corporate name adopted by defendant, and second, as to its use of Masonic emblems and insignia.

1. As to the name: Section 2245, C. L. 1921, reads in part as follows: " * * * No certificate shall be filed or received for any domestic corporation bearing a name identical with, or similar to or liable to be mistaken for the name of any other domestic corporation. * * * "

Any one will be able, without much effort, to point out distinguishing features, largely of minor consequence, in

the names of plaintiff and defendant. But even a cursory glance at section 2245, C. L., above quoted, will show that precise identity of one name with that of the other is not the only evil forbidden by law. On the contrary, the statute also prohibits "a name identical with, or similar to or liable to be mistaken for the name of any other domestic corporation." Indeed, faint or trifling semi-distinctions are often the chief subterfuges employed by those who would unlawfully make use of another's corporate name. The adjudicated cases, some of which we cite, are common illustrations. It is frequently done while they maintain a grasp on the key words and central idea of the name imitated, and thus promote confusion. Defendant employed these methods. When it comes to corporate names, the test is not necessarily actual deception, but the tendency to deceive, especially when the preventive relief sought is against continuance of such conduct. *Driverless Car Co. v. Glessner-Thornberry Car Co.*, 83 Colo. 262, 265, 264 Pac. 653.

2. In the names of plaintiff and defendant, the word "Masons" is of course the principal word. The full title, which, in substance, and almost literally, has been in common use in this country (with a variation only in the name of the state) for more than a century is "Most Worshipful Grand Lodge Free and Accepted Masons of Colorado." Every word of it is found in order in the name of both these parties, and such other words as are found in either are common to both or are superfluous. The right of a just and regularly constituted lodge of Masons to the exclusive use of such name is one of its most valuable assets. We take judicial notice of the fact that they compose an immense fraternal order. We do this not only because it is a matter of general and common knowledge, but also because of our statutes. Our legislature has given express recognition in our insurance laws to "grand or subordinate lodges of Masons," section 2629, C. L. 1921. The words "Mason" and "Masonic" have thus acquired a secondary meaning. These

references emphasize the danger of the indiscriminate and unauthorized use of such name, even more so than in ordinary cases. And when two garments are cut from the same cloth and pattern, it is idle to say that they are not alike.

3. In addition to the word "Masons," the words "Prince Hall" also suggest identity, not difference, to the public mind, and it must be especially so to colored Masons, for, as the articles of each corporation in evidence show, each claims lawful Masonic succession by virtue of the charter said to have been obtained by the Boston colored man, Prince Hall, and his associates, in the year 1784. The words "Ancient York" in defendant's name, but omitted from plaintiff's name, spells no difference, for both claim to be Ancient York Masonic orders, according to their respective articles on file in the office of the secretary of state. Defendant had constructive notice that such was plaintiff's claim by the latter's prior filing. This only goes to accentuate the confusing similarity. From aught here disclosed, the simple word "Hiram" in defendant's articles, may be common to both. Bewilderment is deepened and the morass of almost certain misunderstanding is stretched out further by the great length of the two names. That of plaintiff contains fourteen words, and that of defendant twenty, but defendant's incorporators, in christening their lodge, used every word in plaintiff's name. The extra six words do not serve to separate the respective identities of the two purported Masonic bodies; some of them, on analysis, knit them closer, like "Ancient York," as we have said. "National Compact Origin," in defendant's name, means nothing to the public at large, for plaintiff and defendant both got the only Colorado corporate origin they possess or claim to possess, by virtue of the corporation laws of this state. The ingenious transposition of words throughout defendant's twenty-worded corporate designation, and the wedging of more words here and there, does not becloud the fact that defendant unlawfully appropriated

all that plaintiff owns, or claims to own, in the way of a name.

4.  Proceeding with the test of a tendency to deceive, we remark that we cannot but believe, if the members of plaintiff and defendant lodges should sit together in friendly convocation, or in a joint meeting, that the rank and file of the brethren themselves would encounter difficulty in knowing to which lodge they belonged, if dependent solely upon their recollection of the name of their parent corporation. We think the ordinary man could scarcely determine off-hand, on such an occasion, whether to respond "present," or to keep silent at the roll call of the one or the other organization. No doubt the members could ascertain their correct status by careful memorization, or by scanning their receipts for lodge dues, or by some other convenient device. But the two corporate names ought not to be so much alike as to call for studious or microscopic comparisons. If the names are of such close resemblance that they are liable to be confused by their own adherents, the uninitiated public doing business with either, would be still worse off.

5.  In a case decided by the United States Circuit Court of Appeals, Eighth Circuit, entitled, *Talbot v. Independent Order of Owls,* 220 Fed. 660, opinion by Judge Sanborn, the court say at pages 661, 662:

"An established voluntary association for religious, fraternal, benevolent, or social purposes is entitled to an injunction against the use by another person, association, or corporation of its name or emblem so similar to it as to be likely to create confusion, or to deceive or induce persons to join or treat with the latter as the former, because such a name or emblem in effect defrauds the former and the persons so confused or deceived. (Citing many cases.) That this principle of equity is just and salutary, and that it should be liberally applied and enforced, is self-evident. That the use by the defendants below of the name Independent Order of Owls and the emblem it adopted to conduct the operations of a corpora-

tion for the same purposes as the purposes for which the Order of Owls had used its name and its emblem for years before the junior organization was formed, and until its subordinate nests had become 1,500 and its members 200,000, would be likely to create confusion among those interested in their operations, and to deceive and induce strangers to join and treat with the junior organization in the belief it was the senior and well-known association, is too clear for discussion. The testimony of the eyes, when a glance at the two names and the two emblems is taken, is a demonstration of this proposition.''

Other cases sustaining plaintiff's contention are, *Sovereign Camp of the Woodmen of the World v. Woodmen of the World,* 73 Colo. 57, 213 Pac. 579; *Grand Lodge, K. P. of North and South America v. Grand Lodge, K. P.,* 174 Ala. 395, 56 So. 963; *Daughters of Isabella, No. 1, v. National Order of Daughters of Isabella,* 83 Conn. 679, 78 Atl. 333; *National Circle, Daughters of Isabella v. National Order of Daughters of Isabella,* 270 Fed. 723; *Creswill v. Grand Lodge Knights of Pythias of Georgia,* 133 Ga. 837, 67 S. E. 188; *International Committee of Young Women's Christian Associations v. Young Women's Christian Association of Chicago,* 194 Ill. 194, 62 N. E. 551, 56 L. R. A. 888; *People v. Rose,* 225 Ill. 496 (In the last named case, the dispute was over the use of the names ''National Liberty Legion'' and ''National Liberty League.''); *Cape May Yacht Club v. Cape May Yacht and Country Club,* 81 N. J. Eq. 454, 86 Atl. 972; *Supreme Lodge of the World, Loyal Order of Moose v. Independent, Benevolent and Protective Order of Moose,* 98 N. J. Eq. 598, 131 Atl. 219; *Benevolent and Protective Order of Elks v. Improved Benevolent and Protective Order of Elks of the World,* 205 N. Y. 459, 98 N. E. 756; *Society of the War of 1812 v. Society of the War of 1812 in the State of New York,* 46 App. Div. 568, 62 N. Y. Supp. 355; *John A. Bell Grand Lodge v. Most Worshipful St. John's Grand Lodge,* 89 Okla. 112, 214 Pac. 114; *Benevolent and*

*Protective Order of Elks of the U. S. A. v. Improved Benevolent and Protective Order of Elks of the World,* 122 Tenn. 141.

Plaintiff's counsel has cited numerous cases of corporations organized for profit, but while in some respects they are co-related, we have in the main confined our references to the closer analogies of corporations not for profit.

6. We do not wish to interfere with any one in the free manifestation of their noble impulses of benevolence and fraternalism, such as proper social contacts, sick benefits, and caring for the widows and orphans of deceased brethren. Such worthy traits are imbedded in the corporate purposes of both plaintiff and defendant. No one has a monopoly on doing good. These inviting fields beckon to all, but the right must be lawfully exercised. The legislature of Colorado, like many other states, has recognized the value of a name, and that its prestige may be cheapened by indiscriminate and unauthorized use. The same may be said of emblems and insignia of rank, like Masons and others. *Talbot v. Independent Order of Owls, supra,* and many other like cases, have been decided on general legal and equitable principles. In the instant case, we have the additional fortification of statutes of like import. Damage was pleaded by plaintiff and admitted by defendant's counsel at the trial, which relieves us from the consideration of the necessity for such pleading and proof, discussed in some of the authorities. At least, it makes plaintiff's case that much stronger, as showing not only a tendency to mislead, but that this was the actual result.

7. Counsel for defendant argue that both plaintiff and defendant may be using the word "Masons," and the emblems and insignia thereof, only by sufferance of others having a superior right thereto. They mean by this, Masonic organizations comprised of white men. We are not called upon to determine such a question, because

neither the question nor such parties are before us. It was neither pleaded nor proven. When plaintiff made its prima facie case, showing it to be entitled to the relief prayed for, we cannot go out of the record to say that some one else has a superior right. When defendant failed to rebut plaintiff's proof, judgment must follow as a matter of course, but it is determinative only of the rights of the parties as between themselves, and those in privity with them. It would take in too wide a territory to make the sweeping statement that as far as the Masons of Colorado or the world are concerned, either plaintiff or defendant is a just and regularly constituted body of Masons, or entitled to the use of the word, or the emblems or insignia of the order. We do not so hold. One case at a time is the rule. The rights of others are reserved, as a matter of law. We add without hesitation that we are in accord with the understanding of the parties that no race question is involved. It happens that both lodges are composed of colored men, but this is only incidental. It would not affect the result if they were all Anglo-Saxons, or of any other blood.

8. Much is said in the briefs as to the legal status of plaintiff on account of our decision in *Most Worshipful King Solomon Grand Lodge of Ancient, Free and Accepted York Masons of Kansas v. Most Worshipful Prince Hall Grand Lodge Free and Accepted Masons of Colorado,* 76 Colo. 469, 232 Pac. 664. The plaintiff in this case was defendant in error there. The defendant in this case was not a party to the other suit. The record in the former case was not in evidence here. The result is that the former suit is only a legal precedent, like any other case, as far as it may be applicable here. In other words, the rule of stare decisis, not res judicata as to either party now before us, is the one we shall follow.

9. Plaintiff proved that it operated according to Mackey's text book on Masonic Jurisprudence, and introduced portions of the compilation in evidence, to show that under the laws, rules and regulations of Masonry,

defendant is a Masonic outlaw in Colorado. The proof was confined to plaintiff's adherence to Mackey; it was not shown that defendant, or that lawful Masonic Lodges as a whole are so governed. Such proof was insufficient to warrant us in relying on Mackey. To make it so, it was necessary to show that not only one of the parties, but both, were so bound, or under a legal obligation to observe its precepts. We are therefore relegated solely to the laws of the state to decide the case. Masons may or may not know that their order is subject to Mackey's Masonic Jurisprudence, but it is not a matter of such common or general knowledge as to warrant the court in taking judicial notice thereof. 15 R. C. L. p. 1058; *Utah Nursery Co. v. Marsh*, 46 Colo. 211, 103 Pac. 302. The fact that Masonry is a secret order only emphasizes the impropriety and impossibility of our taking judicial notice of its inner workings.

10. As to Masonic emblems and insignia: Section 2461, C. L. 1921, reads: "Whenever any association of persons organized into a beneficial or secret society or order, has heretofore adopted or used, or shall hereafter adopt or use, any badge, rosette, emblem or insignia, for the purpose of being worn by its members or to indicate membership in such society or order, it shall be unlawful for any person or persons to counterfeit or imitate such badge, rosette, emblem or insignia, or to use, sell, offer for sale or in any way utter or circulate any counterfeit or imitation of any such badge, rosette, emblem or insignia."

And section 2467, C. L. 1921, reads: "It shall be unlawful for any person or association to adopt as its badge, emblem, rosette or insignia, anything that is likely to be mistaken for the badge, rosette, emblem or insignia of any other benevolent or secret order, or society, or association, theretofore in common use, whether filed with the secretary of state or not."

The evidence was sufficient to show the unlawful use by defendants of the emblems and insignia theretofore

28

adopted by plaintiff. Other comments on this feature are sufficiently embraced in our remarks concerning corporate names.

The judgment is reversed, with directions to grant the injunction, in accordance with this opinion.

## On Rehearing.

The only point that we deem worthy of notice in the petition for rehearing filed by defendants, is with reference to our final order. Their motion for nonsuit having been granted by the trial court, which ruling we have reversed, we shall now, on further consideration, instead of ordering the issuance of an injunction against defendants, direct that the cause be remanded to the lower court for such further action, not inconsistent with this opinion, as it may be advised. Our opinion is modified to this extent only.

Opinion modified and petition for rehearing denied.