## No. 12,434.

MOST WORSHIPFUL PRINCE HALL GRAND LODGE, FREE AND
ACCEPTED MASONS OF COLORADO AND JURISDICTION *v.*
MOST WORSHIPFUL HIRAM GRAND LODGE, FREE
AND ACCEPTED ANCIENT YORK MASONS OF
COLORADO AND JURISDICTION, NATIONAL
COMPACT PRINCE HALL ORIGIN ET AL.

Decided September 16, 1929. Opinion modified October 21, 1929.

332

Mr. George H. Ross, for plaintiff in error.

Mr. Max D. Melville, for intervener.

*En Banc.*

Mr. Justice Adams delivered the opinion of the court.

This case is before us for the second time. In *Most Worshipful Prince Hall Grand Lodge v. Most Worshipful Hiram Grand Lodge,* 85 Colo. 17, 273 Pac. 648, the cause was reversed and remanded for further proceedings. After it went back to the district court, an intervention was permitted on behalf of the Most Worshipful Grand Lodge of Ancient, Free and Accepted Masons of Colorado, a fraternal, benevolent and social organization. Intervener is a legal entity independent of plaintiff and defendant. Issue was joined, and at the second trial, it was found and adjudged, inter alia, that intervener had had and has lawful claims and rights to Masonic names, emblems and insignia superior and long anterior to the claims of the other parties, whose claims, as between themselves, we passed upon in the other reported case above cited. It was also found and determined at the second trial, that intervener's rights were being infringed by plaintiff and defendant. Injunctive relief

and judgment against them in intervener's favor was accordingly entered.

██ Issues of fact were presented to, and heard and determined by the trial court. There was no motion for a new trial, nor any order dispensing with such motion. For this reason, the intervener has moved to dismiss the writ of error. This motion to dismiss the writ is now before us for consideration. It is based on our rule 8, which reads: "The party claiming error in the trial of any case must, unless otherwise ordered by the trial court, move that court for a new trial, and, without such order, only questions presented in such motion will be considered on review."

The following are only some of the numerous decisions of this court in which the above rule has been invoked and sustained: *Blackmer v. Blackmer,* 84 Colo. 540, 272 Pac. 10; *Stotts v. Stotts,* 83 Colo. 368, 265 Pac. 911; *Parrish's Addition v. Reid,* 82 Colo. 419, 260 Pac. 1018; *Denver Tramway Corporation v. Gentry,* 82 Colo. 51, 256 Pac. 1088; *Takamine v. Hirschfeld,* 81 Colo. 501, 256 Pac. 312; *Colorado State Bank of Durango v. Bird,* 79 Colo. 625, 247 Pac. 802; *Price v. People,* 78 Colo. 223, 240 Pac. 688; *Jones v. Dunlap,* 78 Colo. 221, 239 Pac. 989; *Daugherty v. People,* 78 Colo. 43, 239 Pac. 14; *Fincher v. Bosworth & Co.,* 76 Colo. 69, 230 Pac. 596.

We have repeatedly explained that the purpose of rule 8 is to give to the trial court an opportunity to correct its own errors, if any. It is made in fairness to trial courts, the court of review, and primarily, for the benefit of litigants themselves, to avoid long drawn out and costly litigation. Intervener's motion to dismiss the writ of error is well taken. We cannot deny it without abrogating a valuable rule of practice and repudiating an unbroken line of decisions. Without compliance with the rule by the party claiming error, we have no alternative but to conclude that the alleged errors complained of for the first time in this court, did not and do not

exist. The motion to dismiss the writ must therefore be sustained.

Writ dismissed.

## On Rehearing.

Mr. Justice Adams.

This is a case of importance and more than passing interest. Counsel for both parties are earnest, zealous, and manifestly sincere. The members of this court have gone exhaustively into the questions presented by the record. In the main, such inquiries involve questions of practice and procedure, both of trial courts, and in courts of review. The determination of such questions alone would control the result in this instance, but other substantive matters must be referred to by way of a full understanding. A perfunctory discussion would not do justice to either of the parties, nor to this court, in view of the importance of the issues, the tedium of our studies, and the gravity of the consequences whichever way the cause be determined. These considerations justify a review in extenso of the facts and law applicable thereto.

For convenient designation only, and particularly on account of the length of the parties' several names, we shall hereafter refer to the plaintiff as Prince Hall, to the defendant as Hiram, and to the intervener as the Grand Lodge, the latter being the first Masonic Grand Lodge in this state. It was organized in Colorado in the year 1861. This is admitted by all parties. The Grand Lodge and Prince Hall are the only parties before us.

Chronologically arranged, the discussion may be grouped generally under the following heads: First. Status of the case of *Most Worshipful Prince Hall Grand Lodge v. Most Worshipful Hiram Grand Lodge,* 85 Colo. 17, 273 Pac. 648, in its bearing on the present controversy between Grand Lodge and Prince Hall. Second. The application of Grand Lodge to intervene, and Prince

Hall's objections thereto. The intervention was allowed. Third. The Grand Lodge petition or complaint in intervention, and Prince Hall's special demurrer thereto. The demurrer was overruled. Fourth. February 26, 1929, order of trial court, granting Prince Hall ten days to elect if it will stand on demurrer, or twenty days to answer petition in intervention. Prince Hall failed to elect and defaulted for failure to answer. Fifth. June 25, 1929, trial on the merits on evidence taken. Findings and decree for Grand Lodge and order for injunction against Prince Hall and Hiram. Sixth. Proceedings in the Supreme Court.

A more complete synopsis, prepared by the reporter, will be found in the syllabi.

1. In the case of *Most Worshipful Prince Hall Grand Lodge v. Most Worshipful Hiram Grand Lodge, supra,* those two lodges contended with each other as between themselves only. The present alignment is wholly different. It lies solely between the plaintiff, Prince Hall, on the one side, and the intervener, Grand Lodge, on the other. Hiram has dropped out. It came about in this manner: After the case went back and the trial court allowed the Grand Lodge to intervene, Hiram was at first disposed to resist the claims of the Grand Lodge. It therefore filed an answer to the Grand Lodge's petition in intervention, to which answer the latter replied. Later, however, by trial court order of June 25, 1929, Hiram was allowed to withdraw that portion of its answer that claimed rights in Hiram to use the disputed names and insignia, and admitted without qualification the Grand Lodge's exclusive right thereto. Hiram has not since changed its position. The findings and decree went in favor of the Grand Lodge against Prince Hall and Hiram, but the latter does not contest and has made no appearance in this court. It disposes of Hiram.

2. The dispute now being solely between Grand Lodge and Prince Hall, and they being the only parties before us, it follows that their rights must be determined

solely on the basis of the contents of such plea, motion or demurrer as they may have directed against each other. In other words, such consideration eliminates the responsibilities of both Grand Lodge and Prince Hall as to pleadings and fact questions raised or determined, or that might have been raised or determined in the prior adjudication mentioned, between Prince Hall and Hiram, to which Grand Lodge was not a party, reported in 85 Colo. 17, 273 Pac. 648. This is only fair to all parties. It may be readily believed that if Grand Lodge had been a party there, the result would have been different. Our conclusion, however, does not do away with such reported case as a legal precedent. We use it as a precedent now to the extent that it applies to the facts of the present controversy between Prince Hall and Grand Lodge. In the former case (85 Colo. 17, 273 Pac. 648) we employed the same rule in favor of Prince Hall. It was there contended by Hiram, the defendant, that Prince Hall, the plaintiff, was concluded by a previous decision in *Most Worshipful King Solomon Grand Lodge v. Most Worshipful Prince Hall Grand Lodge,* 79 Colo. 469, 232 Pac. 664. We denied the plea, and explained that the principle of stare decisis, and not res judicata, was applicable. The same rule must now be invoked between Prince Hall and Grand Lodge.

3. The following language found at page 26 of our opinion in *Price Hall v. Hiram, supra,* is significant in its bearing on Prince Hall's untenable claim to effect that the case just mentioned is in disparagement of the rights of the Grand Lodge. We there said: ''It [the judgment] is determinative only of the rights of the parties as between themselves and those in privity with them. It would take in too wide a territory to make the sweeping statement that, as far as the Masons of Colorado or the world are concerned, either plaintiff or defendant is a just and regularly constituted body of Masons, or entitled to the use of the word, or the emblems or insignia of the order. We do not so hold.

One case at a time is the rule. The rights of others are reserved, as a matter of law.''

In passing from this point, we are constrained to say that if Prince Hall may now say that Grand Lodge is concluded by Prince Hall's complaint in the former case, it might be also as well said that Prince Hall is concluded by Hiram's answer therein, which denies every claim made by Prince Hall. They are equally illogical. Even as between Prince Hall and Hiram, the former case was not final on fact questions, for on Hiram's petition for rehearing, we remanded the cause for further proceedings not inconsistent with the opinion. We did this because the judgment of the trial court was on a nonsuit, and Hiram had not had an opportunity to defend. We must confine ourselves to the issues between Prince Hall and Grand Lodge.

4. We come now to the second stage, the first appearance of Grand Lodge in the controversy, and take up its application to file a petition in intervention, and Prince Hall's objections thereto.

Sections 22 and 23 of the 1921 Code of Civil Procedure read as follows:

''Section 22. Any person shall be entitled to intervene in an action who has an interest in the matter in litigation, in the success of either of the parties to the action, or an interest against both. An intervention takes place when a third person is permitted to become a party to an action between other persons, either in joining the plaintiff in claiming what is sought by the complaint, or by uniting with the defendant in resisting the claims of the plaintiff, or by demanding anything adversely to both the plaintiff and defendant.''

''Section 23. The intervention shall be by petition, filed in the cause, either before or after issue joined therein, and it must set forth the grounds upon which the intervention rests. A copy of the petition shall be served upon the parties to the action against whom any-

thing is demanded, who shall answer as if it were an original complaint in the action.''

Pursuant to the above code provisions, Grand Lodge filed its verified application *for leave to file* a petition in intervention, which petition was tendered with the application. Both were verified by its grand secretary; both set forth in detail the petitioner's claim of right to the exclusive use of Masonic names, emblems and insignia in Colorado, the continuous and uninterrupted use and enjoyment thereof in this state since the year 1861, and the infringement thereof by the other parties. In opposition, Prince Hall filed its unverified ''objections to application *for leave to file* petition in intervention.'' The objections sought to set forth matters of affirmative defense. They covered claimed defects not appearing either on the face of the application for leave to file, or in the petition in intervention. In the large, such supposed defects were that the statute of limitations had barred petitioner's remedy, that it had been guilty of laches, abandonment by acquiescence, and other argumentative matter.

■■■ A hearing was had on the application to intervene, and the objections thereto. The objections were overruled, and the petition was filed. The ruling was right. The merits of the cause were not triable on the application for leave to litigate them. Prince Hall's affirmative defenses were such that could be raised, if at all, only by answer to the petition, and not to the application to file it. Intervener claimed a right adverse to both plaintiff and defendant, but the intervention did not change the nature of the suit. On page 21 of our opinion in *Prince Hall v. Hiram, supra* (85 Colo. 17, 273 Pac. 650), we dwelt at length on the comparison of names of plaintiff and defendant, and particularly the words, ''Most Worshipful Grand Lodge Free and Accepted Masons of Colorado,'' found in both of their names. A comparison of those words with the name of the intervener needs no comment except to remark on the identity of the words

claimed as a part of the name of each party. They all contended over the same subject matter. The suit became triangular by the intervention, but it continued and ended, as it began, over conflicting claims of right to the exclusive use of Masonic names, emblems and insignia. "The purpose of our code provision * * * is, that the one really interested in the result of an action may intervene, and be made a party, so that the whole controversy shall be ended in one action and by a single judgment. Pomeroy's Rights and Remedies, §411; *Morey v. Lett* (18 Colo. 128)." Quoted here with approval, from *Cache la Poudre Irr. Co. v. Hawley,* 43 Colo. 32, 39, 95 Pac. 317. It follows that the intervention was properly allowed.

5. In determining the sufficiency of a petition to intervene, the averments of the petition, so far as well pleaded, must be taken as true. *Cache la Poudre Irr. Co. v. Hawley, supra,* at page 38, citing *Henry v. Travelers' Ins. Co.,* 16 Colo. 179, 26 Pac. 318; *Wood v. Denver City Water Works Co.,* 20 Colo. 253, 38 Pac. 239; *Morey v. Lett,* 18 Colo. 128, 31 Pac. 857.

6. The third stage of the intervention begins with the petition in intervention after it was filed by the Grand Lodge by leave of court. We have already stated the purport of such petition. Prince Hall then filed a "special demurrer to petition in intervention." The demurrer is an abridged replica of its objections to the *filing* of the petition. We have stated the general contents of such objections. Section 23 of the Code provides that the parties to the action against whom anything is demanded shall answer the petition "as if it were an original complaint in the action." This, however, did not foreclose Prince Hall from demurring to the petition, if it had been susceptible thereto. It must be emphasized, however, that such demurrer admitted facts well pleaded in the Grand Lodge petition. This is all that it did admit, for any purpose whatever, but as to such admission, it was complete in itself.

7. As to the sufficiency of the petition in inter-

vention, if counsel in his argument had called our attention to any defect in the petition, pointed out by the special demurrer, we should have been pleased to have considered it. But he has not argued the demurrer to the *petition in intervention* at all. His arguments are altogether dehors the record. There is no general demurrer; he does not even say that the petition does not state a cause of action. No defect of any kind appears on the face of such petition, and there is no answer to it, except an oral admission of the prior and superior rights of the Grand Lodge, made by counsel for Prince Hall in open court at the trial, which we shall mention again later. Every so-called question of law that Prince Hall now seeks to have us review is raised, if at all, by this "special demurrer" to the petition, and not otherwise. We are not obliged to search for defects, we know of none, and since counsel does not call our attention to any, we must hold that the special demurrer was rightly overruled.

 8. Prince Hall alleges as one ground of its demurrer, that the court did not have jurisdiction, but this is not seriously argued, and cannot be. If the court did not have jurisdiction over the subject matter, there is no case in court for any of the parties, and the whole proceeding is a nullity, but it is obvious that jurisdiction was full and complete. Prince Hall was the first to invoke it. As to jurisdiction over the parties, a stipulation signed by the attorney for Prince Hall and by all other counsel, shows that Prince Hall was duly served. And jurisdiction over the person of plaintiff was confirmed, if confirmation had been necessary, by its general appearance under the special demurrer. There is no merit to jurisdictional objections.

 9. On the subject of the special demurrer to the intervention we revert, at the expense of logical sequence, to Prince Hall's objections to the filing of the Grand Lodge petition in intervention. We do this because of the fact that counsel for Prince Hall seems to

think that the objections are in some way connected with the demurrer. His argument is apparently on the theory that the demurrer to the Grand Lodge petition or complaint, admits, for the purposes of the demurrer, the averments contained in such objections to the filing of such petition. We cannot conceive of why it should be even thought of. The filing of the petition at the initial stage of the intervention is one thing; its contents to be subsequently attacked by demurrer or answer is an entirely different matter. Prince Hall did not demur to its own objections, nor would we allow it, and it cannot be heard to say that Grand Lodge admits for any purpose, Prince Hall's self-serving declarations in its own prior objections, merely because the latter demurred to a wholly different instrument, namely, the Grand Lodge petition. We must observe again that the demurrer admitted the well pleaded facts of the petition, and only that.

 10. We fear that counsel for Prince Hall is confused as to the correct alignment of parties. It would seem that he has inadvertently reversed them in his thoughts. We must point to section 23 of the Code which provides that the parties to the action against whom anything is demanded, shall answer the petition in intervention "as if it were an original complaint in the action." This means that Prince Hall and Hiram were required to answer Grand Lodge, and not vice versa. In a sense, it made Grand Lodge the plaintiff, in that it became the aggressor, and the other parties defendants as to it, but when the initial proceedings on application to intervene were ended, the application and objections thereto became functus officio, and *pleadings* were required. They consisted only of the petition in intervention, which is challenged by the special demurrer. Facts properly assumed are only those contained in the petition; extraneous matters improperly assumed cannot be read therein; Prince Hall's counsel ignored the petition;

hence, the "special demurrer" thereto is no demurrer at all.

11. Counsel for Prince Hall incorporates in its "special demurrer," supposed facts not alleged in the petition in intervention. The demurrant then assumes the truth of his own statements and argues from the premises thus created. It makes this "special demurrer," if anything, a compound instrument wherein the demurrant demurs to his own allegations and concludes that the result puts his opponent out of court. No pleading whatever could be drawn in any court or any case that could withstand such a demurrer if permitted. It is sometimes called a "speaking demurrer" (6 Ency. Pl. & Pr. 298), that is, a demurrer that attempts to relate its own story of supposed facts other than the facts alleged in the pleading to which the demurrer is directed. Such is not the office of a demurrer; it is bad and was rightly overruled. *Cook v. Pablo de la Guerra*, 24 Cal. 239. Argumentative matter contained in the "special demurrer" was likewise out of place. Indeed, all unauthorized addenda to the special demurrer only weakened it by tacitly admitting that the naked petition demurred to was too strong without detraction from the ouside.

12. Counsel for plaintiff Prince Hall goes on the theory that the evidence in *Prince Hall v. Hiram, supra,* is before us in this matter between Grand Lodge and Prince Hall. This is a mistake. The intervener Grand Lodge was not a party there, had no opportunity to cross-examine plaintiff's witnesses nor introduce its own evidence. It is not bound by the evidence in the former case. And neither that evidence, nor any other has been brought to this court by bill of exceptions in the matter now being reviewed.

13. Judicial Notice.—Prince Hall would also have us dispense with proof and take judicial notice of supposed facts not actually nor presumptively within the knowledge of the court. Notable in this regard is the

assumption that we must take cognizance of a long Masonic existence and career that Prince Hall claims, contra-distinguished from all other Masonic bodies. This is argued notwithstanding the fact that according to its own story, Prince Hall was not regularly organized as a body corporate under the laws of this state until recently—the year 1923. Evidence of its activities, its claims, and property acquirements on which it so earnestly relies is not before us. We cannot hear unless and until the record speaks.

As between rival claimants to the same or similar Masonic names and emblems that are alike, shall we be permitted to determine by conjecture contrary to the record, that the winner is an imposter, or that the loser has valid claim to the whole or any part of the rights determined? Does "judicial notice" under such circumstances come to the aid of plaintiff? If so, it might readily vitiate every judgment rendered. As to matters outside the record, counsel for Prince Hall is too generous in attributing to us an omniscience not given to men.

14. As we said in *Prince Hall v. Hiram, supra,* "the word 'Masons' is of course the principal word." And continuing, we said further: "The full title, which, in substance and almost literally, has been in common use in this country (with a variation only in the name of the state) for more than a century is 'Most Worshipful Grand Lodge Free and Accepted Masons of Colorado.'" This statement of a fact generally known might be supplemented by calling attention to other names, found in the title to certain precedents cited in the same opinion. Among them are the words, "Woodmen of the World," "Knights of Pythias," "Young Women's Christian Association," "Loyal Order of Moose," "Order of Elks," and others. It might be no exaggeration at all to say that it is commonly known that there are many organizations with such names, but the general does not necessarily include the specific. In other words, we cannot say

which particular group or body of men or women claims or has a right to claim the coveted name, unless and until it is regularly proven. But if we do it as to Masons, have not others the same right? Must we not then do it also as to corporations whether for profit or not for profit? We fear that if we should assume to possess such uncanny powers and the ability to perform such a superhuman task, it might justly lay us open to severe criticism, even if we should happen to make a lucky guess. The similarity of the names alone would make it impossible to distinguish between ''Jacob and Esau'' under such circumstances.

15. Joint or Exclusive Right.—Counsel for Prince Hall in his argument does not say that the latter claims the exclusive right to the use of Masonic names, emblems and insignia, but only a joint enjoyment thereof with the intervener Grand Lodge. A sufficient answer to this is that no such question is raised by pleadings or proof. And Grand Lodge *does* claim such exclusive right, and has raised the question by appropriate pleadings, supported by proof. The Grand Lodge did not join either with plaintiff or defendant, as it might have done, under section 22 of the Code. It demanded something adversely to both of them, as it had a right to do under the same section. The *exclusive* right is the sole issue.

16. A substantial basis for the reversal of *Prince Hall v. Hiram, supra,* was on account of a too free application by the trial court of the principle of judicial notice. It was there urged, and decided by the trial court that it must be assumed that Prince Hall was operating only by sufferance of some other Masonic lodge. We held otherwise, but now Prince Hall is on the other side of the question, and wishes us to assume that it *is* and has been so acting for an indefinite period, with the implied consent of the intervening Grand Lodge. We cannot change the rule; it operates no matter whom it may affect. If we should reverse this cause, it would only be for the accommodation of a theory that we ex-

346

pressly discountenanced in the former case. The fallacy that we have attempted to point out underlies the whole purpose of plaintiff's writ of error.

17. We here add that we do not take judicial notice of affirmative defenses, which if raised at all must be by way of answer sustained by proof. We have in mind particularly Prince Hall's arguments, with no supporting plea or proof, against Grand Lodge concerning supposed laches, acquiescence, the running of the statute of limitations and other extraneous matters. There are no such defects apparent anywhere. This being so, if Prince Hall's forced construction demands the application of judicial notice at all, it can only be in favor of a presumption that such supposed defects do not exist.

18. The Grand Lodge cannot be foreclosed in its right to reply to new matter by Prince Hall's failure to answer. The latter's "objections" to the filing of the petition are in no sense a substitute for the absent answer to the only real pleading here, namely, the Grand Lodge petition or complaint in intervention, specially demurred to by Prince Hall. As we shall show later, such objections were not so regarded by the trial court nor by any counsel in the case. They could not have been so considered, here, at least, for one thing, because of lack of verification of the "objections." The Grand Lodge petition having been verified, it called for a verified answer. Code, §67.

19. Prince Hall's "objections," to which we have repeatedly referred, were without evidential value or probative force. They were not verified, and even if they had been, could not be considered as an affidavit. *East Denver Municipal Dist. v. Altura Farms Co.*, 60 Colo. 452, 154 Pac. 100. If it be supposed that they are to take the place of evidence, in any way at all, the absence of a bill of exceptions precludes their consideration. *Royal Exchange Assurance v. George Tritch Hardware Co.*, 86 Colo. 368, 281 Pac. 918. And they were no part of the actual trial proceedings.

20. In some way there has slipped into the files of this court, an 84-page booklet, marked, "12434 Plaintiff's [Prince Hall's] Exhibit A." On the cover is inscribed, "Grand Lodge of Colorado, 1876." It purports to contain proceedings of a Grand Lodge, but we have not examined it, and shall not examine its voluminous contents. It is detached from the transcript, is not identified by judge, clerk or court or otherwise and is no part of the record. Counsel for plaintiff in error lodged it in the office of our clerk of court when the cause was docketed. It was improper and will be stricken.

21. In short, "for the purposes of the demurrer," counsel for Prince Hall erroneously assumes the truth of: (1) The latter's complaint or the statements of fact contained in the former proceeding against another party; (2) its objections to the allowance of the intervention; (3) an "exhibit," which is no part of the record, whatever such "exhibit" may contain; (4) arguments outside the record; (5) supposed "facts," incorporated in a special demurrer, but not in the petition demurred to, and (6) that we shall take "judicial notice" of supposed facts not presumptively within our knowledge. These propositions are all fallacious.

22. The target of the special demurrer, namely, the petition in intervention, is not even aimed at in Prince Hall's arguments. We must therefore conclude that it is "evidence" that Prince Hall's counsel desires reviewed. But it cannot be done, for the evidence is not before us. There is no agreed record on error, nor bill of exceptions, nor attempt thereat. Its absence precludes the consideration of such evidence. *Royal Exchange Assurance Co. v. George Tritch Hardware Co.,* *supra,* and cases there cited. If counsel for plaintiff in error still insists that we are wrong, and that he is correct in his belief that he brought the case here for review of law questions only, we need but to point to his arguments on numerous supposed facts not of record. The lack of a bill of exceptions was alleged by intervener as

348

one of its grounds for dismissal. The absence of the bill makes it conclusive on us that the evidence was against the defeated party who brings the case here.

23. The fourth stage of the events indicated at the outset hereof, relates to an order dated February 26, 1929, made by the trial court, wherein Prince Hall was ruled to elect within ten days whether it would stand on its demurrer to the petition, or answer in twenty days. Prince Hall did neither. It was in default for a period of over three months before the case was called for trial, and did not answer at all. The failure to answer admitted the well pleaded averments of the petition in intervention. *Colorado & Utah Coal Co. v. Walter*, 75 Colo. 489, 492, 226 Pac. 864.

24. The trial occurred on June 25, 1929. Counsel for Prince Hall, Hiram and Grand Lodge were all present. The findings and decree recite that the case came on for trial on the merits, and that the court having heard the evidence and being fully advised, made certain findings of fact and conclusions of law. The injunction in favor of Grand Lodge against Hiram and Prince Hall followed.

Although the trial proceedings are not preserved in the record, it is said in the brief of counsel for the Grand Lodge, and admitted by counsel for Prince Hall, that the latter made the following voluntary statement at the trial:

"The plaintiff Grand Lodge [Prince Hall] desires the record to show on behalf of the plaintiff: That because of the knowledge of the plaintiff that the intervener had operated under Mackey's Jurisprudence and was and is the oldest Grand Lodge with prior and superior rights in Colorado as to those rights of plaintiff Grand Lodge, and because of the fact that Mackey's Jurisprudence was and is the fundamental law of the plaintiff Grand Lodge, the plaintiff always has known and therefore admits now that the intervener has always enjoyed the prior and superior rights as to Masonry in Colorado to those of the plaintiff Grand Lodge and for that reason, plaintiff

Grand Lodge has never attempted to interfere, claim or jeopardize any right, claim or interest ever claimed or exercised by the intervener, present, past or future, and does not now desire to do so."

The above was equivalent to a stipulation of fact in open court. It dispensed with the necessity of proof of the facts admitted. It was highly commendable on the part of Prince Hall to save the time of court and opposing counsel. The time of the admission was significant. It came as a striking culmination to extensive litigation. The admission took the place of all that had gone before as far as such admission applied, which substantially covered the whole case. It would indicate to us that the case of *Prince Hall v. Hiram, supra,* might have been avoided had not Prince Hall asserted a claim there, to which it now expressly admits the Grand Lodge has a superior right. The final admission indicated a worthy purpose not to infringe on the intervener's claims. Now, however, the situation is different: Prince Hall wishes to qualify the admission and have us reverse a decree which was wholly in accord with the pleadings, proof and admission. We cannot do it.

24. In Prince Hall's brief, its counsel says that it made such admission. But by way of avoidance, he would now reargue the matters we have disposed of. In other words, counsel would now raise in this court the unpleaded and unproven affirmative defenses above indicated, so that Prince Hall may be allowed some use of the Masonic name, emblems and insignia, notwithstanding the admitted superior rights of the Grand Lodge. Such arguments, however persuasive, cannot supplant the record. They cannot supersede the default for failure to answer nor the admission.

Our reexamination of this matter has convinced us that the judgment should be affirmed, not only for the reasons stated in our original opinion, but also on account of the additional matters which we have set forth above. Because of such additional matters, this is to be

considered as a modified opinion, to include all that we have said both in the original opinion, and also on petition for rehearing. Our purpose has been to state further reasons for our conclusions. The order, however, will be for the affirmance of the judgment, instead of for the dismissal of the writ.

Opinion modified and judgment affirmed.

MR. CHIEF JUSTICE WHITFORD, MR. JUSTICE BUTLER, MR. JUSTICE CAMPBELL, MR. JUSTICE MOORE, MR. JUSTICE BURKE and MR. JUSTICE ALTER concur.