## Prince Hall Grand Lodge
## v. National Grand Lodge

*Philip B. Driver, Jr., Orrin E. Boyle* and *Amos T. Hall,* for plaintiffs.

*I. J. Katz,* for defendants.

SPORKIN, J., May 9, 1962. — These two actions in equity[1] were consolidated for trial before the writer of this adjudication.

Although the two complaints are not identical, the relief sought in each is of the same character. In each

---

[1] The first suit was docketed to the Court of Common Pleas No. 2, June term, 1958, no. 3061 and for brevity will be referred to as "the C. P. 2 action"; and the other suit was docketed to the Court of Common Pleas No. 1, June term, 1958, no. 3062, and will hereafter be referred to as "the C. P. 1 action". The parties, plaintiffs and defendants, in both actions, are set forth in the captions hereinabove.

complaint plaintiffs pray that defendants be enjoined from identifying and representing themselves as belonging to the Masonic Order, or as being associated with Freemasonry, or as authorized to act for or as lodges of the Masonic Order.

The C. P. 2 action concerns a dispute, as to authenticity, between national organizations and their respective officers, whereas the C. P. 1 action involves a similar dispute, between organizations, subordinate to those named in the other action, and their officers, operating within the State of Pennsylvania.

In support of the prayers for relief contained in the complaint filed in the C. P. 2 action, it is alleged that: one plaintiff, The United Supreme Court, Ancient and Accepted Scottish Rite of Freemasonry, Prince Hall Affiliation, Northern Jurisdiction, U. S. A. Inc., (hereafter to be referred to as plaintiff Supreme Council) is a Pennsylvania corporation, with its principal office and place of business in the City of Philadelphia, Pennsylvania; plaintiff Supreme Council is a merger of three separate prior existing Supreme Councils of the Ancient and Accepted Scottish Rite Masonry among Negro men in the United States, which merger was alleged to have been effected in 1881; each of the merging organizations was composed exclusively of members belonging to the branch of Freemasonry commonly known and described as of "Prince Hall Affiliation"; in 1887 a similar Supreme Council, derived from the same ancestry, was effected as the result of another merger, and these two bodies, designated as Supreme Councils of the Ancient and Accepted Rite of Freemasonry, constituted the only two regular and legitimate Supreme Councils among Negro men in the United States; following the mergers, the two Supreme Councils entered into an alliance, and agreed by treaty to divide the United States into two jurisdictional territories,—one being designated as "Northern Jurisdic-

tion" and the other as "Southern Jurisdiction"; 29 States, including Pennsylvania, comprise the Northern Jurisdiction.

It is further averred that: within its territorial jurisdiction, plaintiff Supreme Council has had and retained sole and exclusive jurisdiction over the legitimate Negro members of the Ancient and Accepted Scottish Rite of Freemasonry, Prince Hall Affiliation, and all bodies of the said Rite and its officers, and, from and since its organization plaintiff Supreme Council has formed, chartered and administered subordinate bodies within its territorial jurisdiction; the members of the subordinate bodies, subject to the jurisdiction of plaintiff Supreme Council, are members in good standing in symbolic lodges, subject to the jurisdiction of legitimate and regular Prince Hall affiliated Grand Lodges; all the members of the subordinate bodies have been known by the name and title of Scottish Rite Masons, Ancient Accepted Masons, Ancient Accepted Scottish Rite Masons, or as Masons.

It is further averred that: plaintiff Supreme Council recognizes, and for more than a century has recognized, the Most Worshipful Prince Hall Grand Lodge, State of Pennsylvania, Free and Accepted Masons (which is the unincorporated plaintiff in the C. P. 1 action, and which will be referred to herein as plaintiff Grand Lodge) and its predecessors in title as the only legitimate and regular symbolic Grand Lodge in the State of Pennsylvania of Prince Hall descent; while there is no distinction based on race or creed in defining eligibility to membership in bodies subject to jurisdiction of plaintiff Supreme Council, it and its subordinate bodies have received into membership only qualified men of Negro race; all charters, dispensations and warrants of authority for legitimate, legal and regular subordinate bodies, within its

territorial jurisdictions, have emanated only from plaintiff Supreme Council since April, 1881.

It is further averred that: plaintiff Supreme Council and its subordinate bodies, for a long period of time, have functioned as charitable, benevolent, educational and religious fraternal societies; have established names by which they are known and identified by the public, as well as a good-will, character and reputation of great value; plaintiff Supreme Council and its subordinate bodies have continuously used certain names, badges and paraphernalia which have become well-known and recognized and in which plaintiff Supreme Council and its subordinate bodies and members thereof have acquired a valuable right; plaintiff Supreme Council and its subordinate bodies make use of a secret ritual and ceremonies known only to Freemasons.

It is further averred that: the principal defendant in the C. P. 2 action, National Supreme Council, A. & A. S. R. Masons, Thirty-third and Last Degree of the World, Incorporated, (hereafter referred to as defendant Supreme Council), defendant National Grand Orient of Ancient and Accepted Scottish Rite Masons, and defendant The Most Worshipful Grand Lodge of Free and Accepted Ancient Scottish Rite Masons (colored) of the U. S. of America, Inc., are corporations represented by defendant, William J. Fitzpatrick; defendant Pennsylvania Grand Council of Deliberation is an unincorporated association operating under the authority of defendant Supreme Council, with offices in Philadelphia; defendant William J. Fitzpatrick represents himself as the Most Powerful Sovereign Grand Commander, and the other individual defendants represent themselves to be other officers of defendant Supreme Council.

It is also averred that: plaintiff Supreme Council has never conferred upon defendant bodies any right

to function as a lodge or consistory of the Ancient and Accepted Scottish Rite of Freemasonry and defendant bodies are not in affiliation with or recognized by any legitimate, legal and regular Masonic Grand Lodge in the United States or Supreme Council of the Ancient and Accepted Scottish Rite of Freemasonry in the world.

It is further averred that: defendant, William J. Fitzpatrick, has falsely and fraudulently organized defendant bodies of Negro men in violation of the laws of Freemasonry and of the rights and exclusive jurisdiction of plaintiff Supreme Council, and has created Masonically spurious, clandestine and illegitimate associations for the purpose of defrauding plaintiffs and the public; defendant William J. Fitzpatrick and his associates have falsely and fraudulently represented to the public that defendant bodies have the right and authority to initiate Negro men as members of bodies alleged to be Masonic, as well as the right to confer Masonic degrees, and have induced numerous Negro men to pay sums of money to become members of defendant bodies, and are continuing fraudulently to solicit Negro men to form Masonic lodges; defendant bodies and those associated with them have no authority to act as Freemasons nor to confer degrees of Freemasonry, and are spurious, clandestine and illegitimate, and have falsely and fraudulently adopted, used and worn the distinctive names, badges, emblems, etc. similar to those used and worn by members of plaintiff Supreme Council and its subordinate bodies, to their serious and irreparable damage.

Plaintiffs seek to enjoin defendant bodies and their officers and members from using any of the names associated with Masonry or Freemasonry; from representing themselves to be Masons or Freemasons; from using or displaying any of the names, badges, emblems or insignia used by plaintiff Supreme Council; and from conferring degrees by names similar to

those authorized and conferred by plaintiff Supreme Council.

The complaint filed in the C. P. 1 action by plaintiff Grand Lodge and its officers against bodies subordinate to defendant Supreme Council and its officers, contains substantially the same averments as are pleaded in the C. P. 2 action, and seeks substantially the same relief.

In paragraph 5 of the answer to the complaint in the C. P. 2 action it is admitted that plaintiff Supreme Council is a regular and legitimate supreme body of Freemasonry, but it is denied that plaintiff Supreme Council's jurisdiction is exclusive, and it is averred that defendant Supreme Council is also a legitimate and regular supreme body, the existence of which has been continuous since 1864; defendant Supreme Council further avers it is a direct descendent of a body known as Supreme Council of the U. S., which did not join the merger referred to in the complaint, and maintained its independence; defendant Supreme Council, not having joined in the merger, had the right to continue to function as a legitimate Council, exercising jurisdiction in accordance with Masonic law; plaintiff Supreme Council has no exclusive jurisdiction over legitimate Negro members of the Ancient and Accepted Scottish Rite of Freemasonry who are not affiliated with plaintiff Supreme Council.

In their said answer defendants further aver that: plaintiff Supreme Council and its subordinate and affiliated bodies are clandestine and spurious and are not entitled to use the various Masonic insignia; [2]

---

[2] Compare this allegation, contained in paragraph 26 of the answer, in the C. P. 2 action, with the allegation contained in paragraph 5 of the answer, supra. It is to be noted that these averments are inconsistent; the averments in paragraph 5 admit legitimacy of plaintiff Supreme Council and averments in paragraph 26 deny legitimacy and term plaintiff Supreme Council as "clandestine and spurious."

defendant, William J. Fitzpatrick, is the Sovereign Grand Commander of defendant Supreme Council, which body is a direct descendant of and has had a continuous existence from the Supreme Council of the U. S. since 1864, and defendants have the right and authority to initiate members of the general public to legitimate and legally constituted bodies of Freemasonry in Pennsylvania and elsewhere and to confer degrees.

Defendants further aver that they have the right to use and wear the insignia of Masonry; that these are the general property of regular and legitimate Masonic fraternities, of which defendant bodies are a part.

The answer filed in the C. P. 1 action is, in substance, similar to the answer filed in the C. P. 2 action.

Both answers pray for dismissal of both complaints.

Defendants in each answer pleaded new matter, averring the legitimacy of the respective defendant bodies and their right and authority to function as such, and to establish subordinate bodies, and averring that until the present actions were instituted, plaintiff bodies have not questioned the right of defendant bodies to exist and to practice the principles of Masonry.

Plaintiffs' replies, termed "answers", to new matter in both actions traverse the allegations contained in the new matter.

Issues having been joined, the matter was heard by the chancellor without a jury, and on the basis of the pleadings, the testimony, and the voluminous exhibits offered in evidence, we make the following:

### FINDINGS OF FACT

1. Plaintiff organizations in both the C. P. 2 action and the C. P. 1 action are commonly referred to as "Prince Hall" Masons, or "of Prince Hall affiliation".

2. Plaintiff Supreme Council [The United Supreme Council, Ancient and Accepted Scottish Rite of Free-

masonry, Prince Hall Affiliation, Northern Jurisdiction, Inc.], is one of two Supreme Councils created by the merger of then existing Masonic bodies in 1881. Plaintiff Supreme Council is a corporation, incorporated under the laws of the Commonwealth of Pennsylvania.

3. Plaintiff Grand Lodge, The Most Worshipful Prince Hall Grand Lodge, Free and Accepted Masons of Pennsylvania, is a subordinate Grand Lodge, and is an unincorporated association affiliated with plaintiff Supreme Council and operating within the Commonwealth of Pennsylvania. It has jurisdiction over numerous subordinate lodges throughout the Commonwealth of Pennsylvania, of which 42 are in Philadelphia County.

4. Defendant Supreme Council (National Supreme Council, A. & A. S. R. Masons, Thirty-third and Last Degree of the World, Incorporated), derives from an organization incorporated in the District of Columbia on October 17, 1898 for a term of 50 years. Prior to the expiration of said term, a document extending the life of the organization perpetually and designated "Re-Incorporation" was executed on September 11, 1948, and filed in the Office of the Superintendent of Corporations for the District of Columbia on October 14, 1948.

5. The other defendant bodies in both actions are subordinate bodies and lodges affiliated with defendant Supreme Council.

6. The individual plaintiffs in both actions are various officers and members of the plaintiff bodies.

7. Defendant, William J. Fitzpatrick, named in both actions, is the principal officer of defendant Supreme Council, and is known as its Most Powerful Sovereign Grand Commander.

8. The other individual defendants in both actions are various officers and members of the defendant bodies.

9. All authentic Masonic organizations in the United States derive their origin from the Grand Lodge of England.

10. In 1775, Prince Hall, a highly respected Negro, a resident of Boston, Massachusetts, was initiated into the "Masonic fraternity" by a military lodge attached to a British regiment. With others of the fraternity, he organized African Lodge No. 459 in 1784, under a warrant issued by the authority of the Grand Lodge of England, which granted a charter, duly constituting African Lodge No. 459 as a regular and permanent lodge under the jurisdiction of the Grand Lodge of England.

11. Thereafter, this lodge became a "Mother Lodge", and in accordance with the usage of the fraternity, issued warrants for the creation of new lodges, and subsequently, and in proper order, it became a "Grand Lodge". Prince Hall was head (Master) of African Lodge No. 459 and the head or Grand Master of it when it became a Grand Lodge. Among the subordinate lodges chartered by this Grand Lodge was African Lodge No. 459 *of Pennsylvania*. In 1815, in accordance with Masonic practices and by the same evolutionary processes, this latter Lodge in turn became the "African Independent Grand Lodge of Pennsylvania." This organization, plaintiff in the C. P. 1 action, has existed and functioned continuously since 1815. Following the death of Prince Hall, it changed its name to "Most Worshipful Prince Hall Lodge of Free and Accepted Masons of Pennsylvania."

12. Within Masonic lodges, members receive numbered degrees. The first three degrees are known as symbolic degrees. The fourth to thirty-third degrees inclusive are known as Scottish Rite degrees.

13. By 1880 there were five Supreme Councils of Negro Masons in the United States. They and the subordinate bodies under their authority were composed entirely of Prince Hall Masons. Due to disagreements as to territorial jurisdiction and other matters, duly authorized representatives of the five Supreme Councils met in a "Council of Deliberation," and in 1881 they agreed to the merger of their bodies into two Supreme Councils,—one to be known as the "Northern Jurisdiction" and the other as "Southern Jurisdiction." Thereafter, all Negro Scottish Rite bodies, Supreme or subordinate, in the United States, functioned and were organized under the jurisdiction of the merged Supreme Councils.

14. Prior to 1882, in addition to plaintiff Grand Lodge, there existed another Grand Lodge of Negro Masons in Pennsylvania, known as "National Grand Lodge of Free and Accepted Ancient York Masons", and also known as "The National Grand Lodge", or "National Compact", or "The Compact".

15. On December 26, 1882, the National Grand Lodge of Free and Accepted Ancient York Masons merged with plaintiff Grand Lodge, The Most Worshipful Prince Hall Grand Lodge, Free and Accepted Masons of Pennsylvania. By the merger, The Most Worshipful Prince Hall Grand Lodge, Free and Accepted Masons of Pennsylvania absorbed the former group, and thereafter the National Grand Lodge of Free and Accepted York Masons, also known as "The National Grand Lodge", or "National Compact", or "The Compact", ceased to exist. The validity of the merger was sustained by the Supreme Court of Pennsylvania in Woolford's Appeal, 126 Pa. 47 (1889). Since then, there has been no "Compact" organization in Pennsylvania descended or derived from the original National Grand Lodge of Free and Accepted Ancient

York Masons, or from any other body descended from that source.

16. Plaintiff Grand Lodge, since the merger of the Supreme Councils in 1881, finding of fact 13, has recognized plaintiff Supreme Council as having exclusive power and jurisdiction over Ancient and Accepted Scottish Rite of Freemasonry among Negro Masons in the State of Pennsylvania.

17. Since the merger of 1881, the two Supreme Councils of Northern Jurisdiction and Southern Jurisdiction have had connection only with Prince Hall Grand Lodges and their subordinate bodies. Membership in Scottish Rite bodies within the Supreme Councils has been limited to recipients of symbolic degrees conferred by Prince Hall lodges.

18. Prince Hall Masonic lodges are the only Negro organizations which derive their existence or right to operate as Masonic organizations from the "Grand Lodge of England."

19. Neither defendant Supreme Council nor any of the other organizational defendants and subordinate bodies derive their existence from, or are authorized to operate as Masonic organizations, by the "Grand Lodge of England" or any other authentic derivative body of the Masonic Order.

20. Plaintiff Supreme Council and the counterpart "white" organization of Masons conduct organizational activities separately. Each acknowledges the regularity, legitimacy and authenticity of the other.

21. William H. Benderson was one of the incorporators of an organization entitled "The National Supreme Council of Sovereign Grand Inspectors General of the A.A.S.R. 33rd Degree for North America," which was incorporated in the District of Columbia on October 17, 1898, for a term of 50 years and, until his death in 1948, he was known as "Most Powerful Sovereign Grand Commander" of this organization.

Prior to and at the time of death of William H. Benderson, defendant William J. Fitzpatrick was Secretary General of said organization, which is defendant Supreme Council.

22. On September 11, 1948, a document entitled "Re-Incorporation" was executed. It bears what purports to be the signature of W. T. Benderson as "M. P. Sovereign Grand Commander" and the admitted signature of William J. Fitzpatrick as "Secretary General." The document contains a certification by a notary public Julia C. Fitzpatrick, wife of defendant, William J. Fitzpatrick, that both signers appeared before her on September 12, 1948, in Detroit, Michigan and acknowledged that they had executed the document.

23. On September 11 and September 12, 1948, William Henry Benderson was confined in Freedmen's Hospital, Washington, D. C., suffering from pulmonary tuberculosis. He died of that illness on November 3, 1948. He had been continuously confined in the hospital for a period of more than four months immediately prior to his death.

24. The Re-Incorporation document which purported to continue perpetually the term of existence of defendant Supreme Council as a corporate body, was filed in the Office of the Superintendent of Corporations for the District of Columbia on October 14, 1948.

25. After the death of William H. Benderson, defendant William J. Fitzpatrick became "The Most Powerful Sovereign Grand Commander" of defendant Supreme Council. He resides in Detroit, Michigan, where the headquarters of defendant Supreme Council are located.

26. Defendant William J. Fitzpatrick was formerly a member and officer of an authentic Prince Hall lodge, from which he was suspended. Subsequently, he became a member of a Scottish Rite Consistory, a subordinate body of plaintiff Supreme Council, and was

suspended therefrom in March, 1928. Defendant William J. Fitzpatrick has never been restored to membership and is not a member of any Prince Hall lodge or any body lawfully affiliated with plaintiff organizations.

27. Defendant bodies and the individual defendants have used the names "Masons", "A.A.S.R. Masons", and similar names, and have been using, wearing, exhibiting and displaying Masonic names, badges, mottoes, buttons, decorations and insignia, without authority from an authentic Masonic source.

28. Plaintiffs did not become aware of the activities of the defendant bodies and their Masonic representations to the public, until the summer of 1958.

29. Plaintiff Supreme Council and its subordinate bodies are authentic and regular organizations of Negro Scottish Rite Masonry in the State of Pennsylvania, which is within the territory known as the Northern Jurisdiction, as defined in the Articles of Merger effected in 1881.

## DISCUSSION

The case before us is one of many such suits brought in various parts of the country involving Masonry among colored men. In substance, the plaintiff organizations contend that they are the only "legitimate", "colored" Masonic bodies, and that defendant organizations are "spurious" and "illegitimate". Hence, plaintiffs seek to enjoin the defendant organizations and their officers from representing themselves as Masonic bodies and officers respectively, and from employing recognized Masonic emblems, insignia, symbols, etc.

Plaintiffs have established their charges by a clear preponderance of the evidence and are therefore entitled to the relief sought.

The issue at trial was esentially this: Are the plaintiff organizations, or the defendant organizations, or

both groups of organizations, or neither group of organizations, authentic, properly chartered Masonic organizations?

The record in this case was voluminous.[3]

In 1775, one Prince Hall, a Negro, and 14 other men of his race, were initiated into the Masonic fraternity in a military lodge attached to a British Regiment in Boston, Massachusetts. This lodge received a permit to function in a limited way until it should receive a charter from the Grand Lodge of England. Such a charter was granted in 1784, and received in Boston by Prince Hall on April 29, 1787. In the next month the lodge, under dispensation, was duly constituted as a regular and permanent lodge under the jurisdiction of the Grand Lodge of England, and was duly entered in the Registry of that Grand Lodge as "African Lodge No. 459."

Thereafter, acting under the powers granted to it as a "Mother Lodge," "African Lodge No. 459" organized two subordinate lodges, one in Philadelphia under the name of "African Lodge No. 459 of Pennsylvania"; and another in Providence, Rhode Island, under the name of "Hiram Lodge 3." The above-named "Mother Lodge" and these two subordinates, appropriately organized "African Grand Lodge of Massachusetts," of which Prince Hall was elected "Grand Master." The name of "African Grand Lodge of Massachusetts" was changed in 1808 to "Prince Hall Grand Lodge."

In the year 1815, four subordinate lodges, including "African Grand Lodge No. 459 of Pennsylvania," were duly chartered in Pennsylvania by the "Prince Hall Grand Lodge." In accordance with Masonic procedure, the four subordinate lodges organized "The Most Worshipful Prince Hall Grand Lodge, Free and Accepted

---

[3] The record consisted of almost 1,400 pages of testimony and numerous exhibits, including, inter alia, official documents, minute books, archives, historical works, and public addresses.

Masons of Pennsylvania": the plaintiff Grand Lodge. The continuous existence of the plaintiff Grand Lodge from 1815 to the present has been abundantly documented.

Proof of authenticity is likewise clearly established by the evidence with respect to plaintiff organization in the Court of Common Pleas No. 2 action, "The United Supreme Council Ancient and Accepted Scottish Rite of Freemasonry, Prince Hall Affiliation, Northern Jurisdiction, U. S. A. Inc.", referred to as plaintiff Supreme Council.

Masonic Scottish Rite degrees, from the fourth to the thirty-third inclusive, are under the control of a body known as "Supreme Council." [4]

In 1881, five duly organized "colored" Supreme Councils, whose subordinate bodies were composed entirely of Prince Hall Masons, were merged into two Supreme Councils, each with a defined territorial jurisdiction, one of which was the plaintiff Supreme Council.

The testimony overwhelmingly supports the conclusion that the plaintiff Grand Lodge and the plaintiff Supreme Council are lawfully constituted Masonic organizations. In the language of the numerous decided cases, this makes them "legitimate." Many other courts of first instance, as well as appellate courts, have reached the same conclusion.

In Most Worshipful Lodge, etc. Incorporation, 160 Pa. Superior Ct. 595 (1947); Judge Arnold said, page 599: "Under the evidence it is clear and uncontradicted that the Prince Hall Grand Lodge was, and is, the one and only source of legitimate Negro Masonic lodges in Pennsylvania."

In the present case, the record is even more extensively documented than in the last cited case.

---

[4] Corresponding to the authority of a Grand Lodge with respect to symbolic degrees (from the first to third inclusive).

Among the witnesses called in behalf of plaintiffs was Judge George E. Bushnell, former Chief Justice of the Supreme Court of Michigan. After his retirement from the bench, Judge Bushnell, a thirty-third degree Mason, became "Sovereign Grand Commander" of "The Supreme Council of the Ancient and Accepted Scottish Rite of Freemasonry ('White') of the Northern Jurisdiction." Judge Bushnell had been a Mason for over 50 years and has held various offices in the Scottish Rite bodies. His position in Masonry fully qualified him as an expert in Masonic affairs. The following excerpts from his testimony at page 405, et seq., are pertinent to the issue:

"Q. Judge Bushnell, you have already defined and distinguished the word 'Clandestine'. Is there any other Negro Masonic body in the United States that the Northern Masonic Jurisdiction of the United States or the Supreme Council recognizes as being legitimate other than Prince Hall?

"A. No, sir.

.    .    .

"A. We know that Prince Hall is legitimate.

.    .    .

"Q. Are you in a position at this point, Judge, to tell me why? Are you in a position to tell me why?

"A. Tell you why?

"Q. Yes.

"A. We know that they are legitimate in their origin. We know that they are right in their philosophy. We know that they are trying to benefit mankind. We know that a lot of these other groups are just commercializing Masonry and preying on their fellow citizens and adding to the misery of the world and we don't want to have any part of it."

We have considered also the address of Dr. Melvin M. Johnson, a noted Masonic historian, now deceased. At the time of his death, Dr. Johnson was "Senior Past

Grand Master of the ('white') Masons of Massachusetts", a former Dean of Boston University Law School, and for many years the "Sovereign Grand Commander" of the ("white") "Northern Supreme Council of Ancient and Accepted Scottish Rite of Freemasonry", having been the immediate predecessor in that office of Judge Bushnell. As head of the latter body, Dr. Johnson delivered various addresses called "Allocutions". Excerpts from his allocutions were received in evidence. They pertain to relations between the "white" Supreme Council and plaintiff Supreme Council, plaintiff in the C. P. No. 2 actions, and completely support the "legitimacy" of Prince Hall Masonry.

We have also carefully considered the testimony of George W. Crawford, presently the "Sovereign Grand Commander" of plaintiff Supreme Council. He testified with respect to his Masonic activities during the last half century, the books he had written, the offices he had held, and the litigation in which he had engaged against "clandestine" Masonry. His qualification as an authority was testified to by Judge Bushnell: ". . . I look upon Commander Crawford as one of the great Masonic historians of our day."

We have also considered four books which are in evidence: "Negro Masonry" by William H. Upton; "History of Negro Masonry" by William H. Grimshaw; "Negro Masonry in the United States" by Harold V. B. Voorhis; and "A History of Freemasonry Among Negroes in America" by Harry E. Davis. These books were authored by both white and Negro Masons, have been recognized as authoritative by Masonic scholars,[5] and fully support the legitimacy of Prince Hall Masons.

[5] Three of these volumes are referred to in the Most Worshipful Widows' Sons case, supra, in the footnote at Page 599. It is of great interest to note that Judge Arnold in the same footnote referred to articles by Dr. Melvin M. Johnson as "outstanding and authoritative".

Defendants have offered in evidence an article entitled "Negro Masons in the United States" by Harold V. B. Voorhis, the same author of the book "Negro Masonry in the United States" referred to, supra. This article appears in a volume entitled "Proceedings of the Chapter of Research of The Grand Chapter of Royal Arch Masons of the State of Ohio" bearing date 1953-1956. In the article, the author, while recognizing that African Lodge No. 459 was granted a charter by the Grand Lodge of England and "recognized" by this Grand Lodge, nevertheless concludes that the "Prince Hall" National Grand Lodge "trace(s) back to an irregular and/or clandestine origin". This statement is at complete variance with the writer's opinion contained in the book he published in 1949. Therein he said, page 25: "As it (African Lodge No. 459) was the only lodge in Massachusetts chartered directly by the 'Modern' Grand Lodge, there could be no question as to its Masonic standing, etc." Since the later article frankly admits that the conclusions contained therein are largely predicated upon the "researches of Wor. Bro. Edward R. Cusick" who appeared as a witness in the instant case and whose testimony we have found unworthy of credence, see infra, we have concluded that Voorhis' earlier and carefully documented book is more persuasive than his later expressed opinions.

"The general rule is that matters of history, if sufficiently notorious to be subject to general knowledge, will be judicially noticed": 20 Am. Jur. (Evidence) §60.

It also appears from a review of reported cases in other jurisdictions that the Prince Hall bodies have instituted a number of actions against allegedly "spurious" Masonic bodies. Many of these suits terminated in the lower courts. A large number of these cases reached the appellate courts, and we have the benefit

of a substantial body of reported decisions. Almost without exception, the authenticity of Prince Hall Masonic organizations, as against other "colored" organizations, has been sustained.[6]

---

[6] In Prince Hall Grand Lodge v. Most Worshipful K. S. G. L., 308 P. 2d 581 (New Mexico) (1957), plaintiff traced its origin to Prince Hall. The action was brought to enjoin the defendant lodge from using the insignia, signs, symbols, and rituals commonly associated with Masonry. It was held that the use of the words "Masons," or "Free and Accepted Masons," or "A. F. & A. M." or F. & A. M." rendered the name of defendant lodge so strikingly similar to that of plaintiff lodge as to cause confusion and also tended to deceive the public. It was further held that plaintiff should be protected from invasion of its right to exclusive use of the terms, insignia, symbols, etc., commonly used in the practice of Masonry.

Injunctive relief was granted in Saint Joseph's G. L., etc. v. Most W. Saint John's G. L., 143 P. 2d 119 (Okla.) (1943). The facts were strikingly similar to those presented before us. The court found that the plaintiff body had first, prior and exclusive right to operate as a Masonic Grand Lodge in Oklahoma. It had been argued that the defendant body was incorporated prior to the plaintiff's incorporation. The court, quoting from National Circle, Daughter of Isabella v. National Order of Isabella, 270 Fed. 723, 731, said:

" 'Importance cannot be attached to the fact that the defendant was incorporated first. The mere incorporation of an organization under a particular name does not add anything to its rights to use the name as against another organization unincorporated and already using the same or a similar name'." The defendants were restrained from using the badges, emblems, etc., commonly used by Masonic orders and from using any name so nearly resembling plaintiff's name as to be a colorable imitation thereof.

In International F. & A. M. Masons v. Most Worship., etc., 318 S. W. 2d 46 (Kentucky) (1958), the "legitimacy" of the Prince Hall Grand Lodge, plaintiff in the court below, was sustained and defendant organization was enjoined from establishing or conducting lodges identified as "Free and Accepted Masons," or "Masonic Lodge," or "Mason," and was further enjoined from holding itself forth as a Grand Lodge of Free and Accepted Masons, and from using Masonic insignia and emblems.

The court held that the Prince Hall organization first acquired the right to use the term "Free and Accepted Masons" and was

In support of their contention that Prince Hall Masons do not have exclusive rights with respect to the use of Masonic names and symbols, defendants have cited: M. W. Prince H. Grand Lodge v. M. W. Hiram Grand Lodge, 85 Colo. 17, 273 Pac. 648 (1928); Grand Lodge A. F. & A. M. v. Grand Lodge A. F. & A. M., 90 W. Va. 424, 111 S. E. 309 (1922); Free & Accepted Masons v. Ancient F. & A. M., Colored, 179 S. W. 265 (Texas Civ. App.) (1915); and Prince Hall Lodge v. Pride of Harrisburg Lodge, 80 D. & C. 97 (1951). In our view, these cases are not pertinent to the issue before us.

M. W. Prince H. Grand Lodge v. M. W. Hiram Grand Lodge, involved a schism between two groups, both of whom claimed Prince Hall origin.

Grand Lodge A. F. & A. M. v. Grand Lodge A. F. & A. M. is also a schism case; each of the groups claiming descent from Prince Hall. A number of lodges originally affiliated with the plaintiff Grand Lodge withdrew and formed the defendant Grand Lodge. An injunction

---

entitled to an injunction against its use by defendants, and that the Prince Hall Grand Lodge was entitled to protection against appropriation and imitation of its insignia, emblems, etc.

To the same effect is the decision in Most Worshipful Prince Hall v. Supreme Grand Lodge, 105 F. Supp. 315 (U. S. D. C., Georgia) (1951).

Other cases involving the same issues are a group of cases decided by the Court of Common Pleas of New Haven County, Connecticuit, on September 14, 1960:

#59569—Most Worshipful Grand Lodge of Free and Accepted Masons of Connecticut, Incorporated, v. King David Lodge No. 54.

#59570—Most Worshipful Grand Lodge of Free and Accepted Masons of Connecticut, Incorporated, v. Most Wonderful King Solomon Grand Lodge of Ancient and Accepted Scottish Rite, Incorporated.

#59571—Most Worshipful Grand Lodge of Free and Accepted Masons of Connecticut, Incorporated, v. Ezra Lodge No. 1.

#61851—Most Worshipful Grand Lodge of Free and Accepted Masons of Connecticut, Incorporated, v. Martin Luther King Lodge of International F. & A. M. Masons.

was denied because both Grand Lodges were found to be Masonic bodies and no fraud nor deceptive practices were shown.

Similarly, in Free & Accepted Masons v. Ancient F. & A. M. Colored, no question was raised as to the right of either group to use the word "Masons".

The decision in Prince Hall Lodge v. Pride of Harrisburg Lodge, decided by the Court of Common Pleas of Dauphin County, turned on the issue of whether the "National Compact" ("National Grand Lodge of Free and Accepted York Masons") was dissolved when it merged with the plaintiff Grand Lodge. See our finding of fact no. 15, supra. On this issue, the Dauphin County Court found: ". . . it is not established with any degree of certainty whether this compact was dissolved or whether certain lodges merely withdrew their affiliation therefrom."

On the basis of its finding, the court concluded that both plaintiff and defendant lodges were "legitimate" Masonic organizations. The record does not disclose that there was any appeal taken from this decision.

The Pride of Harrisburg case makes no reference to Appeal of George W. Woolford, 126 Pa. 47 (1889). This latter case establishes beyond question that when, on December 26, 1882, the plaintiff Grand Lodge and the "National Compact" merged, the latter ceased to exist, holding, at page 53: "That such union in fact was a lawful one, and the new Grand Lodge formed by the union, i.e., The Most Worshipful Grand Lodge of Free and Accepted Masons of the State of Pennsylvania and its subordinate lodges . . ." are the legitimate successors of all property rights of the previous organizations.

We consider that the Pride of Harrisburg case is inapplicable for two reasons: first, it was decided solely on the ground that the evidence *in that case* did not establish that the "National Compact" had been dissolved; and, second, defendant organizations in the case

at bar have not established derivation from the "National Compact." They trace their Masonic genesis to "The National Supreme Council of Sovereign Grand Inspectors General of the A. A. S. R. 33rd Degree for North America." Although a feeble effort was made in the trial before us to demonstrate a derivative relationship between the defendant organizations and the "National Compact," the evidence produced was utterly incredible. Defendants depended on the unconvincing testimony of Edward R. Cusick. Letters dated July 22 and July 29, 1953, written by this witness to one of the plaintiffs, were produced. In these letters Cusick questioned the "legitimacy" of the defendant Supreme Council and stated that the defendant Supreme Council "was not connected with the National Compact Grand Lodge". The patent contradiction between Cusick's testimony at the trial before us and the written opinions expressed in letters written only a few years earlier, marks his testimony as unworthy of credence.

Defendant organizations stem from "The National Supreme Council of Sovereign Grand Inspectors General of the A. A. S. R. 33rd Degree for North America," which was incorporated in the District of Columbia on October 1, 1898, for a term of 50 years. One William H. Benderson was one of the incorporators and, until his death in 1948, was known as "The Most Powerful Sovereign Grand Commander" of this organization. Prior to and at the time of the death of William H. Benderson, defendant William J. Fitzpatrick was "Secretary General" of the organization. No evidence was produced to establish Masonic authority for the formation of this corporate organization, or of its relationship to any existing, recognized Masonic body authorized to create other Masonic organizations.

As evidence of the origin of defendant organizations we have only two documents. One is evidence of the incorporation of defendant Supreme Council in 1898, and

the other of its "Re-Incorporation" in 1948. The "Re-Incorporation" [7] was accomplished by filing a document in the District of Columbia, purporting to continue perpetually its existence as a corporation. It is therefore clear that defendant Supreme Council was a self-constituted body, created without any authority or grant from any duly constituted Masonic organization.

Fitzpatrick did not appear at the trial. His depositions, taken by plaintiffs, were received in evidence. Fitzpatrick testified that: the defendant Supreme Council, of which he is the head, was incorporated in the District of Columbia in 1898; it had been in existence prior to the incorporation from November 30th, 1864. Fitzpatrick made no reference to the so-called "National Compact." No evidence was submitted by Fitzpatrick to show any connection of the defendant

---

[7] The circumstances surrounding the execution and recording of the "Re-Incorporation" are curious. By the terms of the original corporation charter, the corporate life of the defendant Supreme Council would have expired in October of 1948. The "Re-Incorporation" purports to have been executed on September 11, 1948. It bears two signatures: one, purporting to be that of Benderson as "Most Powerful Grand Sovereign Grand Commander," and the other, of William H. Fitzpatrick as "Secretary General." The notarial certificate bears the date September 12, 1948, and certifies that both Benderson and Fitzpatrick appeared personally before the Notary Public in Detroit, Michigan, and acknowledged the document to be "a true act and deed." The notary public is Julia C. Fitzpatrick, wife of "Secretary General" Fitzpatrick, a Notary Public for Wayne County, Michigan. It was established at the trial of this case that on September 11 and September 12, 1948, William H. Benderson, the "Sovereign Grand Commander," was confined in Freedmen's Hospital, Washington, D. C., suffering from pulmonary tuberculosis and that he died of that illness on November 3, 1948. An official certificate of death indicates that he had been *continuously* confined in the hospital for a period of four months and six days prior to his demise. On both September 11 and September 12, 1948, Benderson was undoubtedly confined in the hospital in Washington, D. C. How he could have appeared before the notary public in Detroit, Michigan, on either of those dates is not explained.

Supreme Council with any recognized Masonic organization.

In their requests for conclusions of law, and briefs, defendant organizations now concede that they are not lawfully constituted Masonic organizations. In direct contradiction to their sworn pleadings in which they had asserted complete authenticity, defendants now argue that neither plaintiff nor defendant organizations are authentic. Therefore, they urge, none of the groups has the exclusive right to be identified as Masonic. We are confronted with inconsistent and unstable positions taken by defendants in their pleadings, evidence, requests for findings and conclusions, and in their arguments now advanced to the court. These shifting and inconsistent positions clearly demonstrate the fundamental weaknesses of defendants' case and do not therefore enable us to accept any of their contentions.

Defendants' defense of laches is without merit. The Superior Court has given the answer to this defense in Widows' Sons case, supra, at page 599: "Their lodges, not Masonic, still have usurped the name 'Masons'. They claim that some usurpation of the name began a decade or two ago; and that by the 'virtue' of this they have thus become Masons, their lodges legally and duly constituted, and both legitimatized. But since their beginning was illegal and tortious, it may well be doubted that the illicit situation can any more grow into a lawful status than can the continuing cohabitation of a man and woman, unlawful from its inception, convert that illegal relationship into a lawful marriage."

Furthermore, defendants have not demonstrated that plaintiffs had knowledge of defendants' conduct, which is the subject of this suit, prior to the summer of 1958.

The record makes it abundantly clear that plaintiff organizations are duly constituted Masonic bodies, and

that defendant organizations are not. It is undisputed that defendant organizations have been representing and identifying themselves as Masonic and using the symbols of Masonry. It is obvious that the unlawful conduct of defendants has caused and threatened irreparable damage to plaintiffs.

Fraternal organizations are entitled to the protection of the law to the same extent as are corporations which have been created for the purpose of financial profit: Daughters of Isabella, No. 1 v. National Order Daughters of Isabella, 83 Conn. 679.

With respect to both cases before us, we reach the following:

### Conclusions of Law

1. The court has jurisdiction of the parties and the subject matter of this litigation.

2. Plaintiff organizations are lawful and duly constituted Masonic organizations.

3. Defendant organizations are not lawfully constituted Masonic organizations.

4. Plaintiff organizations are directly and lawfully descended from the "Grand Lodge of England", which is the lawful source of all Masonic Lodges.

5. Plaintiff, "The Most Worshipful Prince Hall Grand Lodge, Free and Accepted Masons of Pennsylvania," was lawfully organized on December 27, 1815, and since then has been in continuous existence.

6. Plaintiff, "The United Supreme Council, Ancient and Accepted Scottish Rite of Freemasonry, Prince Hall Affiliation, Northern Jurisdiction of the U. S. A., Incorporated," was lawfully constituted in the year 1881, and has had lawful and uninterrupted existence from that date to the present.

7. Plaintiffs, "Prince Hall Grand Lodge" and "United Supreme Council Prince Hall Affiliation" were and are the only lawful source of Negro Masonic Lodges and Scottish Rite bodies in the State of Pennsylvania.

8. Defendants have no right to represent or identify themselves as belonging to or being associated with Freemasonry, or to use the names, badges, emblems, words, signs or symbols commonly known as identifying Masons and Masonic organizations.

9. Defendants have wrongfully and unlawfully used and still use Masonic names, badges, emblems, words, signs, symbols and other Masonic identification, to the great damage and irreparable injury of plaintiffs.

10. The defense of laches is not applicable to the present case.

11. Plaintiffs are entitled to the remedies prayed for in their bills of complaint.

Accordingly, we enter the following:

### DECREE NISI

And now, to wit, May 9, 1962, it is ordered, adjudged and decreed that the following named defendants:

National Supreme Council, A. & A. S. R. Masons, Thirty-third and Last Degree of the World, Incorporated;

National Grand Orient of Ancient and Accepted Scottish Rite Masons;

The Most Worshipful Grand Lodge of Free and Accepted Ancient Scottish Rite Masons (colored) of U. S. of America, Inc.;

Pennsylvania Grand Council of Deliberation, National Supreme Council, A. & A. S. R. Masons;

The Most Worshipful National Grand Lodge of Free and Accepted Ancient Scottish Rite Masons (colored) of The United States of America, Inc.;

The Pride of Pennsylvania Grand Lodge, Ancient Free and Accepted Masons;

The National Supreme Council, A. & A. S. R. Masons, Inc.;

Pennsylvania Grand Council of Deliberation (working under the authority of the National Supreme Council, A. & A. S. R. Masons, Inc.) ;

William J. Fitzpatrick, George V. Peters, George W. Graham, William L. Mons, Preston E. Tilghman and William Murray, as individuals in their own behalf and as members and officers of the said bodies;

As well as all other members and officers of the said organizations, are hereby enjoined and restrained from:

1. Acting or attempting to act under, or using, the name of "A. & A. S. R. Masons," or any other name or names imitating or bearing a resemblance to "Masons" or "Freemasons."

2. Representing or holding themselves out to be "Masons" or "Freemasons."

3. Representing that defendant bodies or any of their members are members of the Fraternity of Freemasons, or the Fraternity of the Ancient Accepted Scottish Rite of Freemasonry, or are in any way associated with plaintiff Prince Hall Grand Lodge or any of its subordinate lodges.

4. Representing that defendant bodies or any of their officers are authorized to confer or communicate degrees in the Fraternity of Ancient Accepted Scottish Rite of Freemasonry or in the Fraternity of Freemasonry.

5. Using, wearing, exhibiting or displaying any of the names, badges, mottoes, buttons, decorations, charms, emblems or other insignia generally identified with those used and worn by members of plaintiff Supreme Council, and by members of plaintiff Grand Lodge, and by their subordinate bodies and their members, in the Commonwealth of Pennsylvania.

6. Using or aiding in the use of any written or printed matter or device in imitation of, or bearing a resemblance to any written or printed matter or device used by plaintiff Supreme Council, by plaintiff Grand Lodge, or by their subordinate lodges and bodies.

7. Engaging in any activities, practices, usages, rituals, or conduct usually engaged in by Freemasons.

The prothonotary is directed to give notice of this decree nisi and of the filing of the adjudication to all parties or their counsel, and unless exceptions are filed within 20 days after such notice, this decree shall be entered by the prothonotary, upon praecipe, as the final decree.